550 S.E.2d 319

**Marianne OSBORNE, individually, and as Guardian ad Litem for Matthew Connor Osborne, a minor, Petitioner,**

v.

**R. Stephen ADAMS, M.D., B. Edward O'Dell, M.D., Adams, O'Dell, Davidson and Lusk, OB/GYN, P.C., Evelyn H. Melnick, M.D., J.E. Harlan, Jr., M.D., Pee Dee Neonatal Associates, P.A., and McLeod Regional Medical Center, Defendants,**

**of which, McLeod Regional Medical Center is, Respondent.**

No. 25320.

Supreme Court of South Carolina.

Heard May 9, 2001.
Decided July 23, 2001.
Rehearing Denied Aug. 22, 2001.

Edward L. Graham, of Zeigler and Graham, of Florence, for petitioner.

John S. Wilkerson, III, of Turner, Padget, Graham & Laney, P.A., of Florence, for respondent McLeod Regional Medical Center.

PLEICONES, Justice.

Marianne Osborne's ("Osborne") son, Connor, was born prematurely and received care at McLeod Regional Medical Center ("McLeod") in its neonatal care unit. After Connor developed serious physical and mental ailments, Osborne brought suit alleging negligence on the part of the above-captioned defendants. The trial court granted McLeod's motion for summary judgment. The Court of Appeals, relying in large part on its decision in *Simmons v. Tuomey Regional Medical Center*, 330 S.C. 115, 498 S.E.2d 408 (Ct.App.1998) (hereinafter, "*Simmons I*"), affirmed. *Osborne v. Adams*, 338 S.C. 82, 525 S.E.2d 268 (Ct.App.1999). We granted certiorari to review the Court of Appeals' decision, in light of our

modification of *Simmons I. See Simmons v. Tuomey Regional. Medical Center*, 341 S.C. 32, 533 S.E.2d 312 (2000) (*"Simmons II "*). We reverse.

## ISSUE I

Did the trial court err in granting McLeod's motion for summary judgment?

## ANALYSIS

■ In reviewing the grant of a summary judgment motion, this Court applies the same standard which governs the trial court under Rule 56(c), SCRCP: summary judgment is proper when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Baughman v. American Tel. & Tel. Co.*, 306 S.C. 101, 410 S.E.2d 537 (1991).

■ In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *Summer v. Carpenter*, 328 S.C. 36, 492 S.E.2d 55 (1997). On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below. *Williams v. Chesterfield Lumber Co.*, 267 S.C. 607, 230 S.E.2d 447 (1976).

Based on its holding in *Simmons I* that a hospital's nondelegable duties are confined to emergency room care, the Court of Appeals affirmed the trial court's grant of summary judgment in favor of McLeod. The Court of Appeals expressed its opinion that Section 429 of the Restatement (Second) of Torts was not an accurate reflection of the law of this State, and therefore, Osborne could not rely on that section in maintaining a cause of action against McLeod.

However, in *Simmons II*, this Court adopted section 429,[1] and held that a hospital owes a common law nondelegable duty

---

1. Section 429, Restatement (Second) of Torts, provides:

to render competent service to its emergency room patients such that it may not avoid liability for the negligent acts of emergency room physicians hired as independent contractors under a contract between the hospital and a separate corporation.

Although *Simmons II* involved emergency room physicians, we did not limit our decision to such physicians. The decision was limited, however, "to those situations in which a patient seeks services at the hospital as an institution, and is treated by a physician who reasonably appears to be a hospital employee." *Id.* at 52, 533 S.E.2d at 323. The holding did not "encompass situations in which a patient is admitted to a hospital by a private, independent physician whose only connection to a particular hospital is that he or she has staff privileges to admit patients to the hospital." *Id.*

█ In order to establish liability under section 429, a plaintiff must show that

(1) the hospital held itself out to the public by offering to provide services; (2) the plaintiff looked to the hospital, rather than the individual physician, for care; and (3) a person in similar circumstances reasonably would have believed that the physician who treated him or her was a hospital employee. When the plaintiff does so, the hospital will be held vicariously liable for any negligent or wrongful acts committed by the treating physician. The hospital may attempt to avoid liability for the physician's acts by demonstrating the plaintiff failed to prove these factors.

*Id.* at 51, 533 S.E.2d at 322.

We review each of these elements below.

*Element 1: Holding out*

█ In her complaint, Osborne[2] alleged that McLeod "holds itself out to the public as having specialized facilities,

---

One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants.

**2.** Osborne was employed as a pharmacist at McLeod at the time of her delivery. Nothing in the record, however, indicates that she had

equipment and staff for the provision of high quality obstetrical care." In an affidavit submitted in opposition to McLeod's summary judgment motion, Osborne stated that "[t]hrough McLeod's marketing efforts the representation was made to me that McLeod had first rate physical facilities, staff, equipment and supplies for its birthing center, including a Level 3 Neonatal Intensive Care Unit (hereinafter, "NICU"); that Dr. J.E. Harlan, Jr., was director of McLeod's NICU; and that the neonatologists were an integral part of McLeod's NICU team."

Further, Osborne submitted a three-part article appearing in McLeod Magazine [3] extolling McLeod's facilities and referring to "McLeod neonatologists." The article depicts Dr. Harlan standing in front of what appears to be medical equipment with his arm outstretched, and refers to Harlan as McLeod's Neonatal Intensive Care Unit Director. The article lauds the excellent facilities and care available to newborns and expectant mothers at McLeod.

*Element 2: Plaintiff looked to hospital, rather than individual physician*

In her affidavit, Osborne stated: "I selected McLeod as the hospital where I planned to have my delivery, and obtain any incidental medical services related to my pregnancy, labor, delivery and newborn care." She continued: "[a]t no time did I select these neonatologists to care for my baby. Rather, I selected McLeod as the hospital to provide any and all healthcare needs which might arise incident to my labor and delivery and the newborn care for my son.... I had no knowledge that these neonatologists were employed by their own professional association, as opposed to being employed directly by McLeod. To my knowledge they were the only neonatologists working at McLeod.... I thought all of my son's health care [sic] services at the McLeod NICU were being provided by

knowledge of the fact that the neonatologists at McLeod were employed as independent contractors.

3. There appears to be some dispute as to whether McLeod Magazine is an advertising vehicle aimed at attracting patients to McLeod, or a professional recruitment tool designed to attract healthcare providers to the hospital.

McLeod, and did not realize the neonatologists were independently employed."

*Element 3: Reasonable belief that service is being provided by hospital*

In addition to the McLeod Magazine article mentioned in the discussion of Element 1, above, Osborne stated in her affidavit that "I had been exposed to [the McLeod Magazine] articles early in my pregnancy, and they reinforced my belief that the neonatologists were not separately employed, but were an integral part of McLeod's professional NICU team. I do not recall any marketing materials about McLeod's NICU making a distinction between the nurses/technicians being hospital employees and the neonatologists being independently employed."

Viewing this evidence in the light most favorable to Osborne, she has made a *prima facie* showing of the elements required in *Simmons II*. The McLeod Magazine article is evidence that McLeod held itself out as providing top-notch neonatal services; Osborne avers in her affidavit that she believed the neonatologists were McLeod employees; and, in light of the magazine article, and the other evidence adduced, a finder of fact could infer that her belief was reasonable.

We are not convinced by McLeod's argument that this case is distinguishable from *Simmons II* due to the fact that all hospitals are required to have emergency rooms while they are not mandated to have NICUs. The rule announced in *Simmons II* contains no requirement that the service be mandated by law before a plaintiff can recover based on section 429. We decline to add such a requirement.[4] We note that although McLeod was not mandated by law to maintain a NICU, the hospital sought and acquired a Level III designation from the South Carolina Department of Health and Environmental Control. In order to achieve this designation, McLeod was required to have the services of a neonatologist available. *See* 24A S.C.Code Ann. Regs. 61–16 § 608.3 (1992).

---

4. We stress that the decision we announce today only finds that Osborne has presented some evidence that McLeod had a nondelegable duty as defined in Section 429 of the Restatement (Second) of Torts. We intimate no opinion as to whether Osborne will prevail after a full airing of the facts.

*ISSUE II*

Should the holding in *Simmons II* apply prospectively only?

*ANALYSIS*

██ Osborne's recovery against McLeod might yet be foreclosed if we decide, as McLeod urges, that the holding in *Simmons II* should apply prospectively only. "[T]he general rule regarding retroactive application of judicial decisions is that decisions creating new substantive rights have prospective effect only, whereas decisions creating new remedies to vindicate existing rights are applied retrospectively.... Prospective application is required when liability is created where formerly none existed." *Toth v. Square D Co.*, 298 S.C. 6, 8, 377 S.E.2d 584, 585 (1989) (internal citations omitted). "Other cases which have held prospective application to be appropriate include those in which immunities have been dissolved." *Id.* at 9, 377 S.E.2d at 586.

In *Toth,* the Court had to determine whether its earlier holding in *Small v. Springs Industries, Inc.*, 292 S.C. 481, 357 S.E.2d 452 (1987), should apply prospectively only. In *Small,* the Court held that employee handbooks were admissible as evidence of a contract of employment. The *Toth* defendants, employers being sued by former employees for breach of contract, argued that *Small* created new contractual obligations, and therefore, should apply prospectively only. The Court declined to so limit *Small.* It reasoned that the *Small* holding recognized no new right or cause of action, nor did it abolish any previous immunities. The Court continued:

> *Small* involved an action for breach of contract. It is elementary that a cause of action for breach of contract is not a new one. Respondent argues that *Small* "substantially altered the doctrine of employment at-will to create contractual obligations ... where none had existed before." We do not agree that a new contractual obligation has been created. The companies themselves previously created the contractual obligations through promises made in employee handbooks.... Employers cannot now be allowed to re-

tract their promises and ignore handbooks they have drafted.

*Toth,* 298 S.C. at 9, 377 S.E.2d at 586.

■ By analogy, Osborne's claims sound in negligence—hardly a novel cause of action. She alleges that McLeod represented that the neonatologists were hospital employees, not independent contractors. She argues, in essence, that now McLeod seeks to retract its representation and shield itself from liability for the neonatologists' negligence.

Furthermore, *Simmons II* did not abolish an immunity, it merely clarified the common law of this State. The Court framed the issue in that case as whether "the Court of Appeals err[ed] in holding that hospitals have a nondelegable duty **under the common law** to render competent service to the patients of their emergency rooms[.]" *Simmons II,* 341 S.C. at 38, 533 S.E.2d at 315 (emphasis added).

A portion of that opinion explains that

> [t]his Court and the Court of Appeals have applied the nondelegable duty doctrine in several situations. An employer has a nondelegable duty to employees to provide a reasonably safe work place and suitable tools, and remains vicariously liable for injuries caused by unsafe activities or tools under the employer's control. A landlord who undertakes repair of his property by use of a contractor has a nondelegable duty to see that the repair is done properly, and remains vicariously liable for injuries caused by improper repairs.

> A common carrier has a nondelegable duty to ensure that cargo is properly loaded and secured, and remains vicariously liable for injuries caused by an unsecured load. A bail bondsman has a nondelegable duty to supervise the work of his employees, and remains vicariously liable for injuries caused by those employees. A municipality has a nondelegable duty to provide safe streets even when maintenance is undertaken by the state Highway Department, and remains vicariously liable for injuries caused by defective repairs.

> Tuomey Regional mentions some of the above cases and argues they are distinguishable because in this case it is the

independent-contractor physician—not the hospital—who controls a patient's medical treatment. Tuomey Regional also contends regulations promulgated by the state Department of Health and Environmental Control do not impose such a duty.

We find Tuomey Regional's arguments unpersuasive. The cited cases clearly illustrate that a person or entity entrusted with important duties in certain circumstances may not assign those duties to someone else and then expect to walk away unscathed when things go wrong.

*Id.* at 42–44, 533 S.E.2d at 317–18 (internal citations omitted).

Here, if we apply the *Simmons II* rule retroactively, Osborne will only recover against McLeod if she proves the neonatologists' negligence proximately caused harm to her son. Applying the rule to McLeod in this case would be no different than applying the rule to the defendant-hospital in *Simmons II*.

Because *Simmons II* did not create a new cause of action or abolish any existing immunity, but merely recognized a new remedy to vindicate existing rights, we apply the rule articulated in that case retroactively.

## CONCLUSION

Osborne has made a *prima facie* showing of the existence of a genuine issue of material facts, and because the rule of *Simmons II* applies retroactively, the grant of summary judgment in favor of McLeod was error. We therefore REVERSE the opinion of the Court of Appeals.[5]

TOAL, C.J., MOORE, WALLER and BURNETT, JJ., concur.

---

5. We recognize that neither the trial court which granted summary judgment, nor the Court of Appeals was guided by our decision in *Simmons II* at the time they rendered their decisions in this case.