560 S.E.2d 606

Evelyn H. CONNER, Respondent,

v.

CITY OF FOREST ACRES, J.C. Rowe,
and Lewis Langley, Petitioners.

No. 25410.

Supreme Court of South Carolina.

Heard Jan. 9, 2002.
Decided Feb. 11, 2002.
Rehearing Denied April 1, 2002.

Kathryn Thomas, of Gignilliat, Savitz & Bettis, of Columbia, for petitioners.

Henry Hammer and Howard Hammer, of Hammer, Hammer, Carrigg & Potterfield, and Scott Elliott, of Elliott & Elliott, P.A., all of Columbia, for respondent.

WALLER, Justice:

This is a wrongful discharge action. The trial court granted petitioners summary judgment on all claims. The Court of Appeals reversed and remanded. *Conner v. City of Forest Acres*, Op. No. 99–UP–433 (S.C. Ct.App. filed August 18, 1999). This Court granted certiorari to review the Court of Appeals' decision. We affirm in part, and reverse in part.

## FACTS

Respondent Evelyn Conner worked for the City of Forest Acres ("the City") as a police dispatcher. She was hired in July 1984 and was terminated in October 1993. At the time of her termination, J.C. Rowe was the Chief of Police, and Corporal Lewis Langley was her immediate supervisor. Beginning in November 1992, Conner received numerous reprimands for such things as violating the dress code, tardiness, performing poor work, leaving work without permission, and using abusive language. In July 1993, Conner was evaluated as unsatisfactory [1] and placed on a 90–day probation. She was reprimanded twice in August 1993, and her October 1993 evaluation showed only slight improvement; therefore, the City terminated her on October 7, 1993.

Conner filed a grievance, and at the hearing before the grievance committee, she disputed many of the reprimands.[2] The grievance committee voted 2–1 to reinstate Conner. The City Council, however, rejected the grievance committee's decision and voted to uphold Conner's termination.

---

1. In a statement written by Langley and attached to her evaluation, Langley stated that Conner's performance had declined since her last annual evaluation. He specifically noted that Conner was unable to stay at her work station because of numerous visits to the restroom.

2. For example, Conner was reprimanded for using abusive language toward a coworker. The reprimand stated she called the coworker "stupid" for doing a certain task requested by an officer. At the grievance hearing, Conner presented testimony from Jane Lowe, another dispatcher, who stated she called the coworker stupid.

During her employment, Conner received two employee handbooks. After receiving each one, Conner signed an acknowledgment form. The 1993 acknowledgment[3] stated as follows:

I acknowledge that I have received a copy of the City of Forest Acres Personnel Policy and Procedures Manual (Adopted July 1, 1993). I understand that I am responsible for reading, understanding, and abiding by the contents of these policies and procedures. I further understand that all the policies contained herein are subject to change as the need arises. I further understand that nothing in these policies and procedures creates a contract of employment for any term, that I am an employee at-will and nothing herein limits the City of Forest Acres's rights for dismissal.

On page 1 of the handbook, entitled INTRODUCTION, there is the following language:

### IMPORTANT NOTICE

MANY OF THE POLICIES CONTAINED IN THIS HANDBOOK ARE BASED ON LEGAL PROVISIONS, INTERPRETATIONS OF LAW, AND EMPLOYEE RELATIONS PRINCIPLES, ALL OF WHICH ARE SUBJECT TO CHANGE. FOR THIS REASON, THIS HANDBOOK IS CONSIDERED TO BE A GUIDELINE AND IS SUBJECT TO CHANGE WITH LITTLE NOTICE. THE HANDBOOK DOES NOT CONSTITUTE A CONTRACT OF EMPLOYMENT FOR ANY TERM.

NOTHING IN THIS HANDBOOK SHALL BE CONSTRUED TO CONSTITUTE A CONTRACT. THE CITY HAS THE RIGHT, AT ITS DISCRETION, TO MODIFY THIS HANDBOOK AT ANY TIME. NOTHING HEREIN LIMITS THE CITY'S RIGHTS TO TERMINATE EMPLOYMENT. ALL EMPLOYEES OF THE CITY ARE AT-WILL EMPLOYEES. NO ONE EXCEPT THE CITY ADMINISTRATOR HAS THE AUTHORITY TO WAIVE ANY OF THE PROVISIONS OF THIS HAND-

---

**3.** The 1987 acknowledgment is essentially the same, except it does not contain the last clause of the last sentence of the 1993 acknowledgment.

BOOK, OR MAKE REPRESENTATIONS CONTRARY TO THE PROVISIONS OF THIS HANDBOOK.

This same language appears on the last page of the handbook.

The handbook contained a section entitled "Code of Conduct." In this section, the handbook states that conduct "reflecting unfavorably upon the reputation of the City, the Department, or the employee will not be tolerated." Furthermore, this section advises that:

> This code of conduct is designed to guide all employees in their relationship with the City.
>
> The following is a non-exclusive list of acts which are considered a violation of the Code of Conduct expected of a City employee, and such conduct will be disciplined in accords with its seriousness, recurrence, and circumstances. Degrees of discipline are given under the section entitled "Discipline" in this manual.

The list enumerates 23 different acts.

The Disciplinary Procedures section of the handbook states that it is the "duty of all employees to comply with, and to assist in carrying into effect the provisions of the personnel policy and procedures." Additionally, he handbook states the following:

> Ordinarily, discipline shall be of an increasingly progressive nature, the step of progression being (1) oral or written reprimand, (2) suspension, and (3) dismissal. Discipline should correspond to the offense and therefore NO REQUIREMENT EXISTS FOR DISCIPLINE TO BE PROGRESSIVE. FIRST VIOLATIONS CAN RESULT IN IMMEDIATE DISMISSAL WITHOUT REPRIMAND OR SUSPENSION.

Furthermore, this section states that violations of the code of conduct "**are declared**" to be grounds for discipline and that discipline "**will be used** to enforce the City's Code of Conduct." (Emphasis added). Finally, the grievance procedure is outlined in detail. In this section, the handbook states "[i]t is the policy of the City of Forest Acres that all employees shall be treated fairly and consistently in all matters related to their employment."

After Conner was terminated, she brought suit against the City, Rowe and Langley. In her original complaint, she alleged five causes of action; an amended complaint contained nine causes of action. After the case was removed to federal court, and then eventually remanded back to state court, only three causes of action remained: breach of contract, breach of contract accompanied by a fraudulent act, and bad faith discharge.

The trial court granted petitioners' motions for summary judgment. The Court of Appeals reversed finding that a jury question existed regarding whether the handbook altered Conner's at-will employment status with the City. The Court of Appeals further found that there was a jury issue as to whether Conner was terminated for cause.

## ISSUES

1. Were Rowe and Langley improperly added as respondents to the appeal when the Notice of Appeal only named the City?

2. Did the Court of Appeals err in reversing summary judgment on the breach of contract and bad faith discharge claims?

3. Did the Court of Appeals err in reversing summary judgment on the claim for breach of contract accompanied by a fraudulent act?

## DISCUSSION

### 1. Conner's Appeal Against Rowe and Langley

■ Petitioners Rowe and Langley argue that the appeal against them should be dismissed because Conner failed to timely serve them a Notice of Appeal. We agree.

When Conner appealed the trial court's decision, she filed a Notice of Appeal which named only "City of Forest Acres" as respondent. The Notice is dated January 12, 1998. In a letter dated January 14, 1998, the Court of Appeals advised Conner's attorney that the caption should read differently, i.e., that the City, Rowe and Langley should be listed as defendants, and the City separately named as respondent.

After several extensions were granted to Conner for filing her initial brief, the brief and designation of matter were filed in late May 1998. Thereafter, and in response to the Court of Appeals' request, Conner filed a "corrected" Notice of Appeal and Proof of Service which now named Rowe and Langley as respondents. Rowe and Langley objected. Conner filed a motion to correct the record which Rowe and Langley opposed. The Court of Appeals granted the motion and accepted the backdated Notice of Appeal.

Rowe and Langley argue that the Court of Appeals erred in allowing this "correction" because this was not a typographical error or mere oversight. Instead, they contend Conner initially pursued an appeal against the City only, and this was confirmed by the subsequent correspondence between Conner and the Court of Appeals.

■ Service of the notice of intent to appeal is a jurisdictional requirement, and the Court has no authority to extend or expand the time in which the notice of intent to appeal must be served. *Mears v. Mears*, 287 S.C. 168, 337 S.E.2d 206 (1985).

Clearly, Rowe and Langley were not served with a Notice of Appeal naming them as respondents within the 30-day time period prescribed by Rule 203(b)(1), SCACR. Nonetheless, citing *Moody v. Dickinson*, 54 S.C. 526, 32 S.E. 563 (1899), Conner argues that clerical errors on a Notice of Appeal will not defeat the appeal.

In *Moody*, the defendant filed a Notice of Appeal naming "H.J. Moody" as plaintiff. However, "defendant's counsel, having **soon** afterwards discovered the mistake in the title of his notice of appeal, gave notice to plaintiffs' counsel that he would move . . . to amend the notice of appeal by . . . adding the names" of the other plaintiffs. *Id.* at 531, 32 S.E. at 565 (emphasis added). This motion was granted, and plaintiffs appealed. The Court held that there was no error "in allowing the defendant to correct **a mere clerical error** in the title of his notice of intention to appeal, whereby it is not even claimed that plaintiffs were misled or in any way prejudiced. . . ." *Id.* at 534, 32 S.E. at 566 (emphasis added).

We find the instant case is factually distinguishable from *Moody*. Here, the facts indicate that the Notice of Appeal did

not contain a mere clerical error. First, Conner did not "soon" after filing the Notice discover any mistake. Second, the Court of Appeals' first correspondence with Conner advising her of the way the caption should read (i.e., with only the City named as respondent and Rowe and Langley named as defendants) should have alerted Conner to this "mistake." It was not until the Court of Appeals invited Conner to "correct" the Notice that Conner took any action. Indeed, the rule of *Moody* compels us under these facts to find Rowe and Langley were misled into believing they were not part of this appeal by the almost five-month delay in amending the Notice, and therefore, they clearly were prejudiced by the amendment.

Accordingly, we hold that the Court of Appeals erred in granting Conner's motion to correct the record and accepting the backdated Notice of Appeal. *See Mears, supra.* Petitioners Rowe and Langley are dismissed from this action.

## 2. Breach of Contract and Bad Faith Discharge Claims

The City argues the Court of Appeals erred in reversing summary judgment because Conner failed to produce evidence of the existence of a contract with the City (other than at-will employment) or that the City breached such a contract. We hold the Court of Appeals correctly reversed.

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *E.g., Koester v. Carolina Rental Center, Inc.,* 313 S.C. 490, 443 S.E.2d 392 (1994); Rule 56(c), SCRCP. In determining whether any triable issues of fact exist for summary judgment purposes, the evidence and all the inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Id.* Moreover, since it is a drastic remedy, summary judgment should be cautiously invoked so that a litigant will not be improperly deprived of trial on disputed factual issues. *Baughman v. American Tel. and Tel. Co.,* 306 S.C. 101, 112, 410 S.E.2d 537, 543 (1991).

The City argues there was no contract created by the handbook because: (1) the procedures in the employee handbook did not alter Conner's at-will status, (2) the disclaimers

in the handbook were conspicuous and therefore effective, and (3) Conner signed acknowledgments of her at-will status. Additionally, the City contends that even if the handbook did create a contract, it did not breach the contract because it followed the prescribed procedures.

The general rule is that termination of an at-will employee normally does not give rise to a cause of action for breach of contract. *Hudson v. Zenith Engraving Co.*, 273 S.C. 766, 259 S.E.2d 812 (1979). However, where the at-will status of the employee is altered by the terms of an employee handbook, an employer's discharge of an employee may give rise to a cause of action for wrongful discharge. *Small v. Springs Indus., Inc.*, 292 S.C. 481, 357 S.E.2d 452 (1987). Because an employee handbook may create a contract, the issue of the existence of an employment contract is proper for a jury when its existence is questioned and the evidence is either conflicting or admits of more than one inference. *See id.* at 483, 357 S.E.2d at 454; *Kumpf v. United Tel. Co. of Carolinas, Inc.*, 311 S.C. 533, 536, 429 S.E.2d 869, 871 (Ct.App. 1993).

The Court in *Small* stated that "[i]t is patently unjust to allow an employer to couch a handbook, bulletin, or other similar material in mandatory terms and then allow him to ignore these very policies as 'a gratuitous, nonbinding statement of general policy' whenever it works to his disadvantage." *Small*, 292 S.C. at 485, 357 S.E.2d at 455. The *Small* Court instructed that if an employer wishes to issue written policies, but intends to continue at-will employment, the employer must insert a conspicuous disclaimer into the handbook. *Id.* However, in *Fleming v. Borden*, 316 S.C. 452, 450 S.E.2d 589 (1994), the Court indicated that whether the disclaimer is conspicuous is generally a question for the jury. *Id.* at 464, 450 S.E.2d at 596 (" 'the disclaimer is merely one factor to consider in ascertaining whether the handbook as a whole conveys credible promises that should be enforced.' ") (quoting Stephen F. Befort, *Employee Handbooks and the Legal Effect of Disclaimers*, 13 Indus.Rel.L.J. 326, 375–76 (1991–92)). Specifically, the *Fleming* Court stated that "[i]n most instances, summary judgment is inappropriate when the handbook contains both a disclaimer and promises." *Id.*

■ Relying primarily on *Fleming,* the Court of Appeals in the instant case found that summary judgment was inappropriate. We agree. While the City argues that its handbook contained disclaimers which were effective as a matter of law and that Conner signed acknowledgments of her at-will status, the fact remains that the handbook outlines numerous procedures concerning progressive discipline, discharge, and subsequent grievance. The language in the handbook is mandatory in nature [4] and therefore a genuine issue of material fact exists as to whether Conner's at-will status was modified by the policies in the handbook. *See id.* (summary judgment is not appropriate where disclaimers and mandatory promises are both found in handbook).

■ The City also argues that if a contract exists, then as a matter of law, it did not breach the contract because it followed the procedures outlined in the handbook. The Court of Appeals found that because "Conner disputes the City's version of the events resulting in her reprimands and subsequent termination," summary judgment was not proper "on the issue of whether Conner was fired for cause."

■ Although this is a closer question, we agree with the Court of Appeals that there is a genuine issue of material fact as to whether Conner was wrongfully terminated. The appropriate test on the issue of breach is as follows: "If the fact finder finds a contract to terminate only for cause, he must determine whether the employer had **a reasonable good faith belief** that sufficient cause existed for termination." *Prescott v. Farmers Telephone Co-op., Inc.,* 328 S.C. 379, 393, 491 S.E.2d 698, 705 (Ct.App.1997), *rev'd on other grounds,* 335 S.C. 330, 516 S.E.2d 923 (1999).[5] We note that the fact finder

---

4. For example, the handbook states that: (1) violations of the Code of Conduct "**will be** disciplined," (2) "discipline **shall be** of an increasingly progressive nature," and (3) "all employees **shall be** treated fairly and consistently in all matters related to their employment." (Emphasis added.)

5. *Cf. Small,* 292 S.C. at 483–84, 357 S.E.2d at 454. The Court in *Small* noted that where the jury found that a handbook created an employment contract, it was for the jury to decide whether the employer "reasonably could have determined that Small's actions" warranted immediate discharge as a "serious offense." Therefore, it is generally a jury question as to whether the employer acted reasonably pursuant to

must not focus on whether the employee actually committed misconduct; instead, the focus must be on whether the employer reasonably determined it had cause to terminate. *Id.; see also Small,* 292 S.C. at 483–84, 357 S.E.2d at 454.

Conner's basic argument is there was no just cause for her termination. Although it appears that the City followed its handbook procedures in effectuating Conner's termination, the grievance committee voted to reinstate Conner; i.e., the committee found no just cause for Conner's firing. Subsequently, the City Council overturned the committee's decision. While the committee and City Council both could have reached their respective conclusions reasonably and in good faith, it nonetheless appears that reasonable minds can differ as to whether just cause existed to support Conner's termination. Thus, there remains the ultimate question of whether the City had a reasonable good faith belief that sufficient cause existed for termination. *Id.* This is a question that generally should not be resolved on summary judgment, and therefore, the Court of Appeals correctly reversed the trial court's grant of summary judgment in favor of the City. *See Baughman v. American Tel. and Tel. Co., supra* (summary judgment is a drastic remedy which should be cautiously invoked to ensure a litigant will not be improperly deprived of trial on disputed factual issues).

### 3. Breach of Contract Accompanied by a Fraudulent Act Claim

■■■ Finally, the City argues that summary judgment on Conner's claim for breach of contract accompanied by a fraudulent act was proper because Conner failed to establish fraudulent intent and a fraudulent act. Therefore, the City maintains the Court of Appeals erred in reversing summary judgment. We disagree.

■■■ In order to have a claim for breach of contract accompanied by a fraudulent act, the plaintiff must establish three elements: (1) a breach of contract; (2) fraudulent intent

---

the employment contract. *See id; see also Jones v. General Electric Co.,* 331 S.C. 351, 371, 503 S.E.2d 173, 184 (Ct.App.1998) (finding material issue of fact as to whether G.E. had followed its handbook procedures in terminating Jones).

relating to the breaching of the contract and not merely to its making; and (3) a fraudulent act accompanying the breach. *Harper v. Ethridge*, 290 S.C. 112, 348 S.E.2d 374 (Ct.App. 1986). The fraudulent act is any act characterized by dishonesty in fact or unfair dealing. *Id.* "Fraud," in this sense, "assumes so many hues and forms, that courts are compelled to content themselves with comparatively few general rules for its discovery and defeat, and allow the facts and circumstances peculiar to each case to bear heavily upon the conscience and judgment of the court or jury in determining its presence or absence." *Sullivan v. Calhoun*, 117 S.C. 137, 139, 108 S.E. 189, 189 (1921) (citation omitted).

Conner contends that the City and its agents committed numerous fraudulent acts in connection with her termination. Primarily, however, Conner's claim is that the City fabricated pretextual reasons for Conner's termination knowing the reasons were false and did not justify termination for cause. Viewing the evidence in the light most favorable to Conner, as we must, we find there is a genuine issue of material fact as to whether the City fraudulently breached its contract. *See Harper, supra* (the fraudulent act is any act characterized by dishonesty in fact or unfair dealing); *Sullivan, supra* (fraud may assume "many hues and forms").

Accordingly, the Court of Appeals did not err in reversing summary judgment on this claim.

## CONCLUSION

We reverse the Court of Appeals' decision to allow petitioners Rowe and Langley to be added months after the Notice of Appeal was filed. As for the Court of Appeals' decision to reverse summary judgment on all claims pertaining to the City, we affirm.

**AFFIRMED IN PART, REVERSED IN PART.**

TOAL, C.J., MOORE, BURNETT and PLEICONES, JJ., concur.