THIS OPINION HAS NO PRECEDENTIAL 
 VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT 
 AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Tony Lovette, Rudolph S. Scott, Jr., and Julius Higgins,       
Appellants,
 
 
 

v.

 
 
 
Sonoco Products Company,       
Respondent.
 
 
 

Appeal From Richland County
J. Ernest Kinard, Jr., Circuit Court 
 Judge

Unpublished Opinion No. 2004-UP-159
Submitted February 9, 2004  Filed March 
 11, 2004 

AFFIRMED

 
 
 
Cletus K. Okpalaeke, of Columbia, for Appellants.
Clifford L. Bourke, Jr., of Columbia; James M. Powell, of 
 Greensboro, for Respondent.
 
 
 

PER CURIAM:  Tony Lovette, Rudolph 
 S. Scott, Jr., and Julius Higgins (collectively, Appellants) appeal an order 
 of the trial court granting Sonoco Products Company summary judgment in Appellants 
 wrongful termination action. We affirm. 
 [1] 
FACTS
Appellants were each employed by Anchor Continental, 
 Inc. in the spiral tubing division.  In 1996, Sonoco bought Anchors spiral-tubing 
 department.  Prior to the buy-out, Sonoco conducted a meeting with the employees 
 of this division offering them the opportunity to work for Sonoco.  Appellants 
 offered evidence that in this meeting Sonoco made several assurances concerning 
 employment.  Although the actual wording and substance of these assurances varied 
 slightly from worker to worker, from this evidence it appears Sonoco generally 
 assured the Anchor employees: [2]   (1)  No jobs would be eliminated by the buy-out;  
 (2)  employees who wanted to switch to Sonoco would be granted positions and 
 would maintain their positions as long as they performed their work satisfactorily; 
 (3)  previous seniority would be honored;  (4)  Sonoco personnel policies would 
 be the same as existing Anchor personnel policies;  (5)  wages would remain 
 the same or increase;  (6)  all employees would maintain the same positions, 
 responsibilities, and hours but would be offered the choice of changing jobs 
 or remaining at their former jobs following any departmental restructuring;  
 (7) former Anchor employees would be able to participate in Sonocos retirement 
 pension plan after two years and their years of employment with Anchor would 
 be included in calculating eligibility for Sonocos retirement pension plan;  
 (8)  insurance premiums would be waived for at least three years; (9)  employees 
 could roll over their 401(k) contributions to Sonocos plan, if desired;  (10)  
 any employee who decided to stay with Anchor would be given a job in another 
 department with that company.  Eighteen of the twenty employees in the division 
 agreed to change to Sonoco employment, including division supervisor Scott Franklin.  

After Brian Wellman became the 
 manager of the Sonoco division in July of 1997, he significantly restructured 
 the division.  As part of this restructuring, the pay rates for many jobs were 
 lowered.  Although no employees pay decreased, the employees pay rates were 
 frozen until the rates for their jobs met their current pay rates.  Wellman 
 offered Appellants new jobs under the restructuring.  They turned the offers 
 down because they felt the pay increases were not proportionate to the new responsibilities.  
 Appellants stated that because they complained about the changes Wellman made 
 to the division, they were branded troublemakers.  
In August of 1997, Wellman began investigating 
 time-keeping irregularities by the employees in the department after hearing 
 rumors that employees were gone from the work area for long periods of time 
 on weekends when no members of management were around.  Wellman obtained the 
 records of the turnstile controlled by magnetic key cards through which the 
 employees entered the plant from the parking lot and compared them to the employees 
 time cards.  He found significant discrepancies in the records of eight employees, 
 including the three Appellants.  As a result of this investigation, four employees, 
 including Appellants, were fired.  
Appellants initially brought an action in the U.S. 
 District Court for the District of South Carolina, alleging Title VII race-based 
 discrimination, as well as pendent state claims of wrongful breach of employment 
 contract and wrongful retaliatory termination in violation of state public policy.  
 Adopting the report of an assigned magistrate, the District Court dismissed 
 Appellants federal claims, but added, the remaining state law claims are hereby 
 dismissed without prejudice, to be pursued, if at all, in state court.  The 
 Fourth Circuit Court of Appeals affirmed this ruling.  
Appellants then brought an action in state court.  
 Both parties filed motions for summary judgment.  The trial court granted 
 summary judgment in favor of Sonoco.  It subsequently denied Appellants motion 
 for reconsideration.  This appeal followed.
STANDARD 
 OF REVIEW
The purpose of summary judgment is to expedite the 
 disposition of cases which do not require the services of a fact finder.  Dawkins 
 v. Fields, 354 S.C. 58, 69, 580 S.E.2d 433, 438 (2003).  Summary judgment 
 is appropriate when there is no genuine issue as to any material fact and the 
 moving party is entitled to judgment as a matter of law.  Osborne v. Adams, 
 346 S.C. 4, 7, 550 S.E.2d 319, 321 (2001).  The evidence and all reasonable 
 inferences therefrom must be viewed in the light most favorable to the non-moving 
 party.  Id.  It is well established that summary judgment should be 
 granted . . . in cases in which plain, palpable and indisputable facts exist 
 on which reasonable minds cannot differ.  Anders v. S.C. Farm Bureau Mut. 
 Ins. Co., 307 S.C. 371, 373, 415 S.E.2d 406, 407 (Ct. App. 1992) (quoting 
 Main v. Corley, 281 S.C. 525, 526, 316 S.E.2d 406, 407 (1984)); see 
 Bloom v. Ravoira, 339 S.C. 417, 425, 529 S.E.2d 710, 714 (2000) (finding 
 where a verdict is not reasonably possible under the facts presented, summary 
 judgment is proper).  
LAW / ANALYSIS
Appellants argue that the promises made by 
 Sonoco before the buy-out constitute an oral employment contract and an exception 
 to the doctrine of employment at-will. We disagree.
South Carolina recognizes the doctrine of 
 employment at will in wrongful termination actions.   Prescott v. Farmers 
 Tel. Coop., Inc., 335 S.C. 330, 334, 516 S.E.2d 923, 925 (1999).  Although 
 some exceptions have been recognized, the doctrine of employment at-will remains 
 in South Carolina as a longstanding economic incentive that provides the marketplace 
 its necessary flexibility.  Prescott, 335 S.C. at 335, 442 S.E.2d at 
 925.  At-will employment may be terminated by either party at any time, for 
 any reason or for no reason at all.  Prescott 335 S.C. at 334, 516 S.E.2d 
 at 925.  The general rule is that termination of an at-will employee normally 
 does not give rise to a cause of action for breach of contract.  Connor v. 
 City of Forest Acres, 348 S.C. 454, 463, 560 S.E.2d 606, 610 (2002).  
An employer and employee may choose to contractually 
 alter the general rule of employment at-will through an oral contract of definite 
 employment.  Prescott, 335 S.C. at 335-36, 442 S.E.2d at 925-26.  However, 
 to prove the existence of such a contract, which is usually unilateral, the 
 employee must establish:  1) a specific offer, 2) communication of the offer 
 to the employee, and 3) performance of job duties in reliance on the offer.  
 Id. at 336, 442 S.E.2d at 926.  
An offer is the manifestation of willingness to enter 
 into a bargain, so made as to justify another person in understanding that his 
 assent to that bargain is invited and will conclude it.  Prescott, 335 
 S.C. at 336, 442 S.E.2d at 926.  In order to be considered binding, an offer 
 of employment must be definite.  Id. at 336-37, 442 S.E.2d at 926.  An 
 offer arises from conduct from which a reasonable person in the offerees position 
 would be justified in inferring a promise in return for a requested act.  Id. 
 at 336, 442 S.E.2d at 926.  Vague assurances of job security, even if repeated, 
 do not give rise to contractual rights.  Id.
In Prescott, the supreme court found an alleged 
 offer of [a]s long as you do your job, keep your nose clean, that youd have 
 a job at [the employer] right on was not sufficiently explicit to constitute 
 an offer to limit termination to just cause.  Id. at 337, 442 S.E.2d 
 at 926.  It explained a reasonable person in the employees position would construe 
 the statement as praise or encouragement, or even puffery, rather than as 
 an offer of definite employment.  Id.  
Even when construing the alleged assurances made by 
 Sonoco in the light most favorable to Appellants, we find these assurances did 
 not satisfy the criteria set forth in Prescott.  Sonocos alleged statement 
 to the employees that they would maintain their positions as long as they performed 
 their work satisfactorily amounts to no more than a vague assurance of job 
 security.  It did not create any type of contractual rights that would remove 
 Appellants from the general rule of at-will employment.  
Appellants cite Weber v. Perry for 
 the contention that the relinquishment of gainful employment to pursue new employment 
 promised by another is adequate consideration to take a position out of the 
 realm of at will employment. 201 S.C. 8, 21 S.E.2d 193 (1942). The controlling 
 distinction between Weber and the case before us is the nature of the 
 relinquished employment.  In Weber, the plaintiff abandoned his own established 
 business in Michigan to work for another in South Carolina.  While the court 
 did find this move adequate to establish independent consideration, subsequent 
 case law has distinguished these facts from circumstances where an at-will position 
 is relinquished to take another at-will position, even if the new employer promises 
 lifetime employment.  Orsini v. Trojan Steel Corp., 219 S.C. 272, 64 
 S.E.2d 878 (1951).  The mere act of leaving one at-will job for another does 
 not take the new employment out of the general rule, notwithstanding any inducements 
 or promises by the later employer to the contrary.  
There is no evidence in the record that Appellants 
 employment with Anchor was not at-will.  Accordingly, their decision to leave 
 their at-will employment with Anchor to take positions with Sonoco did not create 
 any contractual rights.  We find no error in the trial courts determination 
 that as a matter of law, Appellants were at-will employees of Sonoco and could 
 lawfully be terminated at any time for any or no reason.
Moreover, even when assuming that Appellants were contractual 
 employees who could only be terminated for cause, we find the trial court correctly 
 held no genuine issue of material fact existed to support the Appellants contention 
 that Sonoco breached the alleged contract.  When an employment contract only 
 permits termination for cause, the appropriate test on the issue of breach focuses 
 on whether the employer had a reasonable good faith belief that sufficient 
 cause existed for termination.  Conner v. City of Forest Acres, 348 
 S.C. 454, 464, 560 S.E.2d 606, 611 (2002).  [T]he fact finder must not focus 
 on whether the employee actually committed misconduct;  instead, the focus must 
 be on whether the employer reasonably determined it had cause to terminate.  
 Id. at 464-65, 560 S.E.2d at 611.
Wellman testified that based on a rumor he suspected 
 employees had been leaving the premises without clocking out, in effect being 
 paid for time not spent at work.  It was suspected that most of these violations 
 had occurred over the weekends, when the plant operated without a supervisor 
 or manager present.  Employees could only enter plant from the parking lot through 
 a turnstile controlled by a magnetic key card. A record of the use of each 
 card was maintained by a computer system belonging to Anchor.  Wellman initiated 
 an investigation comparing the timecard records and the key card turnstile records 
 of every employee in the Sonoco division of the plant.  
After comparing the records of all the hourly employees, 
 Wellman disregarded all timecard discrepancies he felt were insignificant, such 
 as times that might reflect the moving of a car, retrieving items from the parking 
 lot, rolling up car windows, etc.  He found eight employees whose discrepancies 
 were substantial.  The absences in question all took place before Wellman assumed 
 the position of plant manager. Wellman then approached division supervisor Scott 
 Franklin for any information regarding the paid absences of these eight employees.  
 Franklin recalled satisfactory explanations for two of them.  Wellman then met 
 with the remaining six employees.  All six were suspended following the meeting, 
 but were told that a second meeting would take place later in the week and that 
 any information regarding the absences would be appreciated between the meetings.  

Prior to the second meeting, two employees came to 
 Wellman with explanations and apologies. They each received an official warning 
 and were reinstated, one with pay and one without.  Appellants, three of the 
 remaining four employees, offered no further information until the second meeting. [3]   Following the second meeting, 
 Appellants were terminated.  
Appellants argue Sonoco waived enforcement of its 
 rule against employees leaving the premises without clocking out by allowing 
 a lunch run system.  According to the testimony of the Appellants and several 
 other employees, Franklin had initiated this system while supervising the Anchor 
 division, whereby a designated employee would leave the premises without clocking 
 out to purchase lunch for the entire crew or cash checks for the crew.  Although 
 this practice continued after Sonoco took over the division, it ended when Wellman 
 became the manager.  
We find no evidence in the record that Sonoco waived 
 its rule against employees leaving the premises without clocking out.  At the 
 most, the lunch run system may have provided a viable excuse for absences 
 when an employee was the designated lunch runner.  The Appellants, however, 
 admitted to paid absences from work at times and for reasons that cannot be 
 justified by the existence of Franklins lunch run system.  They were given 
 ample opportunity to apologize or explain these absences, evidence of Sonocos 
 good faith.  The turnstile records and Appellants admissions in meetings with 
 Brian Wellman gave Sonoco a reasonable good faith basis to terminate Appellants. [4]    
Appellants also argue that they were terminated in 
 violation of a clear mandate of public policy. The trial court did not address 
 the issue of wrongful termination in violation of public policy in its order 
 granting summary judgment.  Appellants failed to seek a ruling on the issue 
 in their motion for reconsideration.  Accordingly, this issue is not preserved 
 for our review.  See  Summer v. Carpenter, 328 S.C. 36, 43, 492 
 S.E.2d 55, 58 (1997) (holding that an issue, if not ruled on, must be ruled 
 on by request in a post trial motion to be preserved for appeal).
The Respondent argues in its brief this court lacks 
 jurisdiction because Appellants failed to file their notice of appeal with this 
 court within ten days after they served it on Respondent as required by Rule 
 203(d)(2), SCACR.  As this court stated in its order allowing Appellants to 
 file their notice of appeal out of time, 
[I]t is the time for serving the notice of appeal that 
 may not be extended.  See Mears v. Mears, 287 S.C. 168, 337 S.E.2d 
 206 (1985) (timely service of the notice of appeal is jurisdictional requirement 
 that cannot be extended or expanded).  This court may allow late filing of a 
 notice of appeal if timely service has been accomplished for good cause shown.  
 See Rules 203(d)(3), 231, & 234(b), SCACR.  
Finding Appellants had established good cause, this 
 court allowed the late filing.  Accordingly, we reiterate this court does have 
 jurisdiction over Appellants appeal.  
For the foregoing reasons, the order of the trial court 
 granting summary judgment to Sonoco is
AFFIRMED.
 HUFF, HOWARD, and CURETON, J.J. concur.  

 
 [1] Respondent filed a motion to strike Appellants 
 reply brief.  The motion is DENIED.  The reply brief was given such consideration 
 as is appropriate under appellate court procedure.  

 
 [2] As mandated by this courts scope of review, we 
 must view the evidence in the light most favorable to Appellants.  Thus, we 
 list these assurances in the broadest manner alleged for the purposes of this 
 appeal only.                                                                                                                                                                                

 
 [3] Lovette admitted to leaving the plant to work 
 on a boat.  Scott denied leaving for long periods and claimed he often loaned 
 his card to others. Higgins claimed permission for most absences, but admitted 
 to leaving to run an errand for his wife on one Sunday in question.  

 
 [4] We need not rule on Appellants argument that 
 the trial court erred in its finding of collateral estoppel.  The court only 
 found that Appellants were estopped from claiming that the discrepancies in 
 turnstile/timecard records did not exist.  No such claim was made by Appellants 
 on appeal.