THIS OPINION HAS NO PRECEDENTIAL 
 VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT 
 AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH 
 CAROLINA
 In The Court of Appeals

 
 
 
 
 Quay Drakeford, Appellant, 
 
 
 
 

v.
 
 
 
 
 New South, Inc., Respondent. 
 
 
 
 

Appeal From Kershaw 
 County
  G. Thomas Cooper, Jr., Circuit 
 Court Judge

Unpublished Opinion 
 No. 2004-UP-433
 Submitted May 12, 2004  Filed 
 July 23, 2004

AFFIRMED

 
 
 
 
 Gerald F. Smith, of Columbia, 
 for Appellant.
 William Lee Duda, of Columbia, 
 for Respondent.
 
 
 

PER 
 CURIAM:  Quay Drakeford brought this action for breach of employment contract 
 against his former employer, New South, Inc., asserting that an employee handbook 
 created an employment contract and New South breached this employment contract 
 and the implied covenant of good faith and fair dealing.  The trial court granted 
 New Souths motion for summary judgment.  We affirm. 
 [1] 
FACTS
Drakeford 
 was hired by New South, a lumber company, in 1995.  He worked there continuously 
 until he was terminated in 2000.  Shortly before his termination, Drakeford 
 was promoted to crew leader, supervising a six-person crew.  After Drakeford 
 became crew leader, a member of his crew asked to be reassigned.  When questioned 
 about her request, she began to cry and explained that Drakeford was a bully 
 and intimidated her.  She stated he used a hateful tone of voice and attitude 
 toward her.  Further investigation revealed several co-workers who said that 
 Drakeford referred to the distressed crew-member as whitey when she was not 
 around and made other racially charged comments.  Additionally, it was alleged 
 he made verbal threats to another member of the crew.  
The 
 investigation also resulted in co-workers disclosing an incident in which Drakeford 
 allegedly used an open knife to point at another worker and made verbal threats 
 to that worker.  The co-worker who had been threatened with the knife also stated 
 that on another occasion, Drakeford came up behind him holding a piece of lumber 
 drawn back like a bat and when discovered said, I could have got him if I wanted.  
 
Based 
 on its investigation of these allegations, New South terminated Drakeford for 
 creating a hostile work environment.  Drakeford sued New South for breach of 
 an employment contract and the implied covenant of good faith and fair dealing.  
 Drakeford asserted that an employee handbook altered his at-will status, creating 
 an employment contract and that New South breached the employment contract when 
 it did not conform to an employee handbook policy creating a progressive disciplinary 
 policy. [2]   The trial court granted New Souths motion 
 for summary judgment, finding the employment handbook did not alter Drakefords 
 at-will employment status, and without an employment contract there could be 
 no implied covenant of good faith and fair dealing.  The court subsequently 
 denied Drakefords motion to alter or amend the judgment.  This appeal followed.  
 
STANDARD OF REVIEW
The 
 purpose of summary judgment is to expedite the disposition of cases which do 
 not require the services of a fact finder.  Dawkins v. Fields, 354 S.C. 
 58, 69, 580 S.E.2d 433, 438 (2003).  Summary judgment is appropriate when there 
 is no genuine issue as to any material fact and the moving party is entitled 
 to judgment as a matter of law.  Osborne v. Adams, 346 S.C. 4, 7, 550 
 S.E.2d 319, 321 (2001).  The evidence and all reasonable inferences therefrom 
 must be viewed in the light most favorable to the non-moving party.  Id.  
 It is well established that summary judgment should be granted . . . in cases 
 in which plain, palpable and indisputable facts exist on which reasonable minds 
 cannot differ.  Anders v. S.C. Farm Bureau Mut. Ins. Co., 307 S.C. 
 371, 373, 415 S.E.2d 406, 407 (Ct. App. 1992) (quoting Main v. Corley, 
 281 S.C. 525, 526, 316 S.E.2d 406, 407 (1984)); see Bloom v. Ravoira, 
 339 S.C. 417, 425, 529 S.E.2d 710, 714 (2000) (finding where a verdict is not 
 reasonably possible under the facts presented, summary judgment is proper).  
 
LAW/ANALYSIS
I.  Timeliness of appeal
New South 
 argues that this court lacks jurisdiction to consider the appeal because Drakeford 
 failed to timely serve the notice of appeal. [3]   We disagree.  
On August 
 22, 2002, Drakeford received written notice of the trial courts order granting 
 New Souths motion for summary judgment.  He timely served his motion to alter 
 or amend the judgment on September 3, 2002. 
 [4]   The trial court denied the motion in an order filed October 1, 2002.  
 Drakeford served the notice of appeal on October 25, 2002.  
Rule 203(b)(1), 
 SCACR, provides, 

 A notice of appeal shall be served 
 on all respondents within thirty (30) days after receipt of written notice 
 of entry of the order or judgment.  When a timely motion for judgment n.o.v. 
 (Rule 50, SCRCP), motion to alter or amend the judgment (Rules 52 and 59, 
 SCRCP), or a motion for a new trial (Rule 59, SCRCP) has been made, the time 
 for appeal for all parties shall be stayed and shall run from receipt of written 
 notice of entry of the order granting or denying such motion.  

New South asserts that the timely 
 filing of a motion to alter or amend merely tolls the running of the thirty 
 day period for serving the notice of appeal rather than the thirty day period 
 beginning anew after the appellant receives the order granting or denying the 
 motion.  Thus, it contends the eleven days between Drakefords receipt of the 
 original order and his service of the motion to alter or amend must be counted 
 against his time for serving the notice of appeal.   
We disagree with this interpretation 
 of the rule.  Rule 203(b)(1), SCACR, clearly states the time for serving the 
 notice of appeal shall run from receipt of written notice of entry of the order 
 granting or denying [the timely post-trial motion].  The supreme court reiterated, 
 Under Rule 59(f), when such a motion is made, the time for appeal from the 
 judgment begins to run from the time of the order granting or denying the motion.  
 Otten v. Otten, 287 S.C. 166, 167, 337 S.E.2d 207, 208 (1985).  Thus, 
 Drakeford had thirty days from the date he received written notice of entry 
 of the order denying his motion to alter or amend to serve his notice of appeal.  
 As he served the notice of appeal within thirty days of the trial courts issuance 
 of the order, we find he timely served his notice of appeal.  Thus, this court 
 has jurisdiction to consider his appeal.                 
 
II.  
 Breach of Contract
Drakeford 
 argues the trial court erred in granting summary judgment because material issues 
 of fact existed concerning whether New Souths employee handbook created an 
 employment contract.  We disagree.
South 
 Carolina recognizes the doctrine of employment at will in wrongful termination 
 actions.  Prescott v. Farmers Tel. Coop., Inc., 335 S.C. 330, 334, 516 
 S.E.2d 923, 925 (1999).  Although some exceptions have been recognized, the 
 doctrine of employment at-will remains in South Carolina as a longstanding economic 
 incentive that provides the marketplace its necessary flexibility.  Prescott, 
 335 S.C. at 335, 442 S.E.2d at 925.  At-will employment may be terminated by 
 either party at any time, for any reason or for no reason at all.  Prescott 
 335 S.C. at 334, 516 S.E.2d at 925.  The general rule is that termination of 
 an at-will employee normally does not give rise to a cause of action for breach 
 of contract.  Conner v. City of Forest Acres, 348 S.C. 454, 463, 560 
 S.E.2d 606, 610 (2002).  
However, 
 an employer and employee may choose to contractually alter the general rule 
 of employment at-will.  Prescott, 335 S.C. at 335, 442 S.E.2d at 925.  
 An employee handbook may create such a contract.  Small v. Springs, 292 
 S.C. 481, 485, 357 S.E.2d 452, 455 (1987).  The court in Small explained, 
 It is patently unjust to allow an employer to couch a handbook, bulletin, or 
 other similar material in mandatory terms and then allow him to ignore these 
 very policies as a gratuitous, nonbinding statement of general policy whenever 
 it works to his disadvantage. Id. at 485, 357 S.E.2d at 455.  
Although the Small court instructed 
 that an employer may continue at-will employment by inserting a conspicuous 
 disclaimer into the handbook, the supreme court subsequently ruled a disclaimer 
 is merely one factor to consider in ascertaining whether the handbook as a whole 
 conveys credible promises that should be enforced.  Id.; Fleming v. 
 Borden, 316 S.C. 452, 450 S.E.2d 589, 596 (1994).  The court in Fleming 
 explained, [A] handbook that contains both promissory language and a disclaimer 
 should be viewed as inherently ambiguous.  Thus, . . . the entire handbook, 
 including any disclaimer, should be considered in determining whether the handbook 
 gives rise to a promise, an expectation and a benefit.  Id. at 463-64, 
 450 S.E.2d at 596  (quoting Stephen F. Befort, Employee Handbooks and 
 the Legal Effect of Disclaimers, 13 Indus.Rel.L.J. 326, 375-76 (1991-92)).  
 
After 
 careful review of New Souths employee handbook, we find the provisions are 
 written in permissive language and accompanied by effective disclaimers of any 
 alteration of the at-will nature of employment. 
The 
 Introductory Statement in New Souths employee handbook specifically states 
 that employment is at-will, and this sentiment is repeated throughout the text, 
 including a section entitled Nature of Employment.  The general tenor of the 
 handbook is as a source of information.  Additionally, upon receipt of the handbook, 
 Drakeford signed a form that was part of the handbook in which he acknowledged 
 that this handbook is neither a contract of employment nor a legal document.  
 He admitted he had read the handbook after receiving it.  Drakeford also clearly 
 demonstrated his understanding of the basic principles underlying at-will employment, 
 as he explained his understanding of the handbook provisions as follows:  That 
 the person that is the employer has the right under any circumstance even one 
 that has been created, he can [terminate] you.  Even if you didnt do what was 
 stated that you did.  Typically, the question of whether a disclaimer is conspicuous 
 is a question of fact.  Williams v. Riedman, 339 S.C. 251, 264, 529 S.E.2d 
 28, 34 (Ct. App. 2000).  However, considering the written statements in 
 the policy, the acknowledgment, and Drakefords professed knowledge, we find 
 the only reasonable inference from the evidence is that New South made an effective 
 disclaimer. 
However, 
 as stated above, the simple existence of a disclaimer is not determinative.  
 Instead, we must consider the actual language of the employment handbook to 
 determine if the handbooks provisions are couched in permissive or mandatory 
 language.  Examples of mandatory language from Conner include:  (1) 
 violations of the Code of Conduct will be disciplined, (2) discipline 
 shall be of an increasingly progressive nature, and (3) all employees 
 shall be treated fairly and consistently in all matters related to their 
 employment.  Conner, 348 S.C. at 464 n.4, 560 S.E.2d at 611 n.4.  
We agree with the trial courts determination 
 that the relevant sections of the New South employee handbook were couched in 
 permissive language.  The section on Progressive Discipline specified: 

 Although employment with New South 
 is based on mutual consent and both the employee and New South have the right 
 to terminate employment at will, with or without cause or advance notice, 
 New South may use progressive discipline at its discretion.  (emphasis 
 added).

The provision 
 further provided that [d]isciplinary action may call for any of three 
 steps, and [t]here may be circumstances when one or more steps are 
 bypassed.  (emphasis added).  When detailing the progressive policy, New South 
 stated that:  

 Progressive discipline means that, 
 with respect to most disciplinary problems, these steps will normally 
 be followed:  a first offense may call for a verbal written warning; 
 a next offense may be followed by a written warning; another offense 
 of the same nature within 6 months may result in termination, or receipt 
 of a third written reprimand for different offenses within a 12 month period 
 may then lead to termination of employment.

(emphasis 
 added).  In this provision, New South recognized certain types of employee 
 problems . . . are serious enough to justify either a suspension during investigation, 
 or, in extreme situations, termination of employment, without going through 
 the usual progressive discipline steps.  (emphasis added).  
The Progressive Discipline provision 
 also referenced an Employee Conduct and Work Rules policy, and stated that 
 it includes examples of problems that may result in immediate suspension 
 or termination of employment.  (emphasis added).  The Employee Conduct and 
 Work Rules policy declares itself to be a non-exclusive list of conduct that 
 may result in disciplinary action, up to and including termination of 
 employment. . .  (emphasis added).  Included in the list of unacceptable behavior 
 is [f]ighting or threatening violence in the workplace, disrespectful conduct, 
 and unlawful or unwelcome harassment.  This policy provision concludes by 
 stating [e]mployment with New South is at the mutual consent of New South and 
 the employee, and either party may terminate that relationship at any time, 
 with or without cause, and with or without advance notice.  
Drakeford relies on Jones v. General 
 Electric Co., 331 S.C. 351, 503 S.E.2d 173 (Ct. App. 1998) in his argument 
 for reversal of the trial courts grant of summary judgment.  The handbook in 
 Jones also included a list of possible offenses in its Work Rules section. 
 Class I violations were described as behaviors in which a single offense subjects 
 the involved employee(s) to discharge while Class II offenses provided for 
 progressive discipline for repeated violations and were described as offenses 
 which, with repetition, will lead to disciplinary time off and/or discharge.  
 Id. at 366-37, 503 S.E.2d at 181-82.  The Work Rules section of the handbook 
 in Jones, especially for Class II violations, used clearly mandatory 
 language with regard to punishment.  Furthermore, Jones testified that the G.E. 
 representatives instructed the new employees during orientation that the handbook 
 was G.E.s bible, and that they abided by the procedures described therein.  
 Id.  at 368, 503 S.E.2d at 182.  This court concluded, [T]here is a 
 material question of fact as to whether G.E.s employee handbook, particularly 
 the section entitled Work Rules, established mandatory procedures or whether 
 the handbook contains merely permissive provisions outlining employee conduct.  
 Id. at 370, 503 S.E.2d at 183.
In contrast 
 to the handbook in Jones, the New South handbook consistently used permissive 
 language when discussing behavioral offenses and punishment.  Accordingly, we 
 find the facts of the present case distinguishable from those in Jones.  
 
Drakeford 
 also argues that his termination violates the Problem Resolution (Grievance) 
 policy of the employee handbook because New South made a commitment to an open 
 and frank atmosphere in which problems or complaints would be heard.  The handbook  
 provision upon which Drakeford relies stated a general commitment to fair treatment 
 and specifically promised that [n]o employee will be penalized, formally or 
 informally, for voicing a complaint with New South in a reasonable, business-like 
 manner, or for using the problem resolution procedure.  This provision does 
 not make any promise related to Drakeford, as he did not pursue the Problem 
 Resolution (Grievance) steps that are outlined in the policy.  
Drakeford 
 further argues the trial court erred in not considering the entire handbook 
 and only focusing on the relevant provisions.  However, the circuit court explained 
 in the preamble of its order that it had considered all evidence in the record, 
 and the entire contract was in the record.  
Furthermore, 
 our own review of the employment handbook demonstrates that New South had assumed 
 through mandatory language only finite and limited duties.  New South used mandatory 
 language to describe its duty to be an equal opportunity employer, make reasonable 
 accommodations under the Americans with Disabilities Act, comply with legal 
 obligations, provide specified employment benefits, give paid holiday time for 
 specified holidays, comply with workers compensation law, give specified sick 
 day benefits, give jury duty benefits, provide short and long term disability 
 benefits, offer a 401(k) savings plan, pay the employees on specified paydays, 
 make certain pay deductions as required by law, pay overtime, investigate all 
 reports of workplace violence, and provide various forms of leave.  Many of 
 the duties accepted by New South in its employee handbook are required by law 
 or provide guidelines that are essential to the operation of a business.  To 
 use these duties to find that an employees status had been altered from at-will 
 would severely undermine the at-will doctrine so as to make an informational 
 employment handbook impossible. 
After reviewing the employment handbook 
 at question in its entirety, we conclude Drakefords at-will status was not 
 altered.  See Darby v. Horton Elec. Co., Op. No. 25839 (S.C. Sup. 
 Ct. filed July 6, 2004) (Shearouse Adv.Sh. No. 28 at 14, 23) (stating employers 
 manual exemplified the appropriate manner in which to give employees a guide 
 regarding their employment without altering the at-will employment relationship 
 where the manual contained conspicuous disclaimers, which the employee understood 
 and the disciplinary procedure contained permissive language and did not provide 
 for mandatory progressive discipline).  Accordingly, we find the trial court 
 did not err in granting summary judgment to New South on Drakefords claim for 
 breach of employment contract and breach of the implied covenant of good faith 
 and fair dealing. [5] 
AFFIRMED.
ANDERSON, HUFF, and KITTREDGE, 
 JJ., concur. 
 

 
 
 [1]   We decide this case without oral argument pursuant to Rule 215, 
 SCACR.

 
 
 [2] The Progressive Discipline policy states a first offense may call 
 for a verbal warning; a next offense may be followed by a written warning; 
 another offense of the same nature within 6 months may result in termination. 
 . . .  

 
 
 [3] New South originally raised this argument in a motion to dismiss.  
 This court denied the motion on February 13, 2003.  New South renewed its 
 argument in its Respondents brief.  

 
 [4] Monday, September 2, 2002, was Labor Day.  

 
 
 [5] The implied covenant of good faith and fair dealing is predicated 
 upon the existence of a contract.  Williams v. Riedman, 339 S.C. 251, 
 274, 529 S.E.2d 28, 40 (Ct. App. 2000).  As we have concluded the trial 
 court properly determined the employment handbook did not alter Drakefords 
 at-will status and thus no contract existed, Drakefords cause of action for 
 breach of an implied covenant of good faith and fair dealing must fail.