THIS OPINION 
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT 
 IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Carolina Power & Light Company,       
Respondent,
 
 
 

v.

 
 
 
Lynches River Electric Cooperative, Inc.,       
Appellant.
 
 
 

Appeal From Chesterfield County
J. Michael Baxley, Circuit Court Judge

Unpublished Opinion No. 2004-UP-247
Heard March 11, 2004  Filed April 15, 
 2004

AFFIRMED

 
 
 
Marcus A. Manos and J. David Black, both of Columbia, and 
 Thomas H. Pope, III, of Newberry, for Appellant.  
Mark W. Buyck, Jr., and Mark W. Buyck, III, both of Florence, 
 for Respondent.
 
 
 

PER CURIAM:  Carolina Power & Light 
 brought this declaratory judgment action against Lynches River Electric Cooperative 
 seeking a declaration of rights regarding the provision of electric service 
 to a Bi-Lo supermarket in the Town of Pageland.  Lynches River appeals the trial 
 courts grant of summary judgment to CP&L.  We affirm.
FACTS
Since 1925, CP&L and its predecessor 
 have provided electric service to the residents of the Town of Pageland.  Lynches 
 River began offering electric service in 1939.  In 1949, the Town of Pageland 
 extended its one-half mile radius boundary by annexing land within a radius 
 of one mile from the center of town.  The newly annexed area included electric 
 utility lines owned by both CP&L and Lynches River.  CP&L, however, 
 has always been the principal supplier of electricity to the town.  
In May of 1981, the town granted CP&L 
 an indeterminate permit to provide electric service to the residents.  Since 
 at least 1990, Lynches River has provided electric service to tenants in a strip 
 mall, including Bi-Lo.  The structure was located outside the original town 
 boundary, but inside the annexed area.  Lynches River has also provided electric 
 service to the parking lot adjacent to the structure.  CP&L has not challenged 
 Lynches Rivers right to continue service to the strip mall.  
In 2001, Bi-Lo began construction on a 
 new store located across the parking lot from the existing structure.  The new 
 structure is located entirely within the original town limits.  The same developer 
 owns the property upon which both structures are located.  
Lynches River and Bi-Lo entered into a contract 
 for electrical service on the new building.  Lynches River offered electrical 
 service to the new structure through a distribution point near the existing 
 structures distribution point.  The distribution points are within the annexed 
 area of the town and not within the original boundary.  
CP&L, upon learning that Lynches River was 
 providing the electrical service to the new structure, filed this claim for 
 a declaratory judgment.  CP&L filed a motion for summary judgment, claiming 
 Lynches River could not serve electricity in the original town boundaries because 
 it is not a rural area and Lynches River failed to meet any of the exceptions 
 allowing it to provide electrical service inside the town.  CP&L presented 
 the figure from the 2000 United States Census showing the population was 2,521.  

Lynches River filed its own motion for 
 summary judgment, asserting the population was below 2,500 and it could continue 
 service to the new structure because it served the existing structure.  Lynches 
 River presented an affidavit by the mayor of the Town of Pageland, which stated 
 it was the mayors belief that the population had dropped below 2,500.  
The trial court determined the mayors 
 affidavit was insufficient to create a genuine issue of material fact as to 
 the population of the town, and that Lynches River did not meet any of the exceptions 
 of S.C. Code Ann. § 33-49-250 (1990) which would allow it to provide electrical 
 service to the new structure.  The trial court distinguished the case of Carolina 
 Power & Light Co. v. City of Bennettsville, 314 S.C. 137, 442 S.E.2d 
 177 (1994), finding the point of delivery to the new structure is not in a rural 
 area, but within the town limits.  Accordingly, the trial court granted summary 
 judgment to CP&L.  
STANDARD OF REVIEW
In reviewing the grant of a summary judgment motion, 
 this court applies the same standard which governs the trial court:  summary 
 judgment is proper when there is no genuine issue as to any material fact and 
 . . . the moving party is entitled to judgment as a matter of law.  Rule 56(c), 
 SCRCP; Baughman v. American Tel. & Tel. Co., 306 S.C. 101, 114-15, 
 410 S.E.2d 537, 545 (1991).  In determining whether any triable issues of fact 
 exist, the evidence and all inferences which can be reasonably drawn from the 
 evidence must be viewed in the light most favorable to the nonmoving party.  
 Strother v. Lexington County Recreation Commn, 332 S.C. 54, 61, 
 504 S.E.2d 117, 121 (1998).  On appeal from an order granting summary judgment, 
 the appellate court will review all ambiguities, conclusions, and inferences 
 arising in and from the evidence in a light most favorable to the non‑moving 
 party below.  Osborne v. Adams, 346 S.C. 4, 7, 550 S.E.2d 319, 321 (2001).
LAW/ANALYSIS
The Rural Electric Cooperative Act (RECA) permits 
 the formation of nonprofit cooperatives for the purpose of supplying electric 
 energy and promoting and extending the use thereof in rural areas.  S.C. Code 
 Ann. § 33-49-210 (1990). [1]   As creatures of statute, rural 
 electric cooperatives only have such authority as the legislature has given 
 them.  Duke Power Co. v. Laurens Elec. Co-op., Inc., 344 S.C. 101, 104, 
 543 S.E.2d 560, 562 (Ct. App. 2001).  They may only serve rural areas, that 
 is, areas where the population is less than 2,500 persons.  S.C. Code Ann. § 
 33-49-250(1) (1990).  RECA permits a cooperative to serve non-rural areas under 
 two exceptions:  (1) the cooperative may continue to provide electrical service 
 to a town in which it is the principal electrical provider, and (2) the cooperative 
 may continue to serve premises it served at the time the area was annexed into 
 the town, and until directed otherwise by the local governing body, it may serve 
 other premises within the same area.  Id.
Both exceptions prevent the ouster of co-ops from 
 areas they have historically served due to population growth or annexation.  
 Duke Power, 344 S.C. at 105, 543 S.E.2d at 562.  The statutory language, 
 therefore, contemplate[s] [a] co-ops continued service in an area to which 
 an exception applies.  Id.
I.       Affidavit Regarding Population of the Town of Pageland
Lynches River asserts the trial court 
 improperly attributed no weight to the affidavit of Pagelands mayor, Carroll 
 Faile, in regards to the towns population.  Lynches River argues the affidavit 
 is sufficient to create a genuine issue of material fact regarding whether Lynches 
 River has the right to provide electric service because the population has fallen 
 below 2,500 people.  We disagree.  
Rule 56(e), SCRCP, states:  Supporting 
 and opposing affidavits shall be made on personal knowledge, shall set forth 
 such facts as would be admissible in evidence, and shall show affirmatively 
 that the affiant is competent to testify to the matters stated therein.  Neither 
 the trial court nor this court are required to single out some one morsel of 
 evidence and attach to it great significance when patently the evidence is introduced 
 solely in a vain attempt to create an issue of fact that is not genuine.  Main 
 v. Corley, 281 S.C. 525, 527, 316 S.E.2d 406, 407 (1984).  
In his affidavit, the mayor identified himself 
 as the towns mayor and a resident of the county, asserted he was familiar with 
 the towns economic conditions and its population trends over the last twenty 
 years, and stated that given the recent economic downturn and the downward population 
 downtrend, he believed and opined that the towns population was on the decrease 
 and had fallen below 2,500.  
In Englert, Inc. v. Netherlands Ins. 
 Co., this court determined an affiants status as the vice-president of 
 the company was insufficient to demonstrate he had personal knowledge of the 
 contract and job performed in that case.  Englert, 315 S.C. 300, 304, 
 433 S.E.2d 871, 874 (Ct. App. 1993).  As in Englert, the mayors affidavit 
 fails to provide sufficient admissible evidence to support his belief.  Although 
 the mayor states he is familiar with the situation in Pageland, his affidavit 
 is not based on personal knowledge, but is only an opinion based on his belief 
 that the towns population had decreased.  The mayor did not, and obviously 
 could not, state he knew the exact population of the town.  Accordingly, the 
 trial court correctly refused to give this morsel of information such significance 
 as to create a genuine issue of fact regarding the towns population. 
Because the only properly admitted evidence regarding 
 the towns populationthe 2000 United States Censusestablished the population 
 was 2,521, Lynches River can only service areas within the town if it falls 
 under one of the exceptions mentioned above and discussed below. 
II.     Other Exceptions 
Lynches River has not contended it is 
 the principal supplier of electricity in the Town of Pageland and is thus not 
 entitled to provide service inside the town under that exception.
The only other exception that could apply 
 is the annexation exception that would allow Lynches River to continue servicing 
 premises being served at the time of the annexation of an area into the town 
 or additional premises within the annexed area until the town directs otherwise.  

Lynches River contends the existing structure 
 and the new structure occupy a single premises because they sit on a single 
 tract owned by the same developer.  Although the statute permits the cooperative 
 to service all premises it served prior to the annexation and all premises in 
 that area until instructed otherwise, it specifically states the cooperative 
 shall not extend service to any premises in any other part of such city or 
 town where, as here, it is not the towns principal electrical provider.  See 
 § 33-49-250(1).  Here, the new structure is entirely within the original town 
 limits, an area in which Lynches River has no right to provide service.
Although not directly applicable to the 
 definition of premises in section 33-49-250, S.C. Code Ann. § 58-27-610 (1976) 
 defines the term for purpose of that article, which involves the service rights 
 of electric suppliers:

(2) The term premises means the building, structure 
 or facility to which electricity is being or is to be furnished; provided, 
 that two or more buildings, structures or facilities which are located on one 
 tract or contiguous tracts of land and are utilized by one electric consumer 
 for farming, business, commercial, industrial, institutional or governmental 
 purposes, shall together constitute one premises, except that any such 
 building, structure or facility shall not, together with any other building, 
 structure or facility, constitute one premises if the electric service to 
 it is separately metered and the charges for such service are calculated independently 
 of charges for service to any other building, structure or facility.

(Final emphasis added.)
In the instant case, the existing structure 
 and the new structure are located on one tract of land.  However, they will 
 be separately metered and the calculation of the electricity consumed by and 
 billed for the existing structure will be separate from that consumed by and 
 billed for the new structure.  As such, they are considered two separate premises 
 even though they are situated on the same tract of land. Accordingly, the trial 
 court correctly concluded Lynches River may not provide service to the new structure.
III.    Carolina Power & Light v. City of Bennettsville
Lynches River argues the holding in Carolina 
 Power & Light Co. v. City of Bennettsville, 314 S.C. 137, 442 S.E.2d 
 177 (1994), applies to its situation because the point of distribution to the 
 new structure lies in the annexed area and outside the original town limits.  
 In Bennettsville the court held a cooperative could provide service that 
 was distributed to a point in a rural area even though it was ultimately consumed 
 within the city limits.  Id. at 139-40, 442 S.E.2d at 179.
In this case, the distribution point is a new distribution 
 point located in an annexed area of the Town of Pageland, not a rural area as 
 in Bennettsville.  Even though the distribution point in this case is 
 in the annexed area, where Lynches River has the right to continue to provide 
 service to existing premises, there was a new connection created which 
 was not authorized by statute.  Accordingly, the Bennettsville 
 case is not controlling and the trial court correctly declined to rely upon 
 its holding.
AFFIRMED.
HUFF and STILWELL, JJ., and CURETON, A.J., concur.

 
 
 [1]        Sections 33-49-210 and 33-49-250 have been recently amended 
 by Act No. 179, 2004 S.C. Acts ___.  The amendments do not affect the outcome 
 of this case.