2463

MADDUX SUPPLY COMPANY, Appellant v.
A-C ELECTRIC CO., INC., Respondent.

(467 S.E. (2d) 448)

Court of Appeals

*Gregg Meyers*, of *Wise & Cole*, Charleston, *for appellant.*

*Kerry Koon*, Charleston, *for respondent.*

Heard Jan. 10, 1996.

Decided Feb. 20, 1996.

GOOLSBY, Judge:

In this collection action, Maddux Supply Company sued A-C Electric Company, Inc. for amounts allegedly owed on an open account. A-C counterclaimed for breach of contract. Maddux appeals the master's order that awarded A-C $1,370.29, which reflected the difference between A-C's damages on its counterclaim as found by the master and the balance owed on A-C's account with Maddux. We reverse and remand for judgment in favor of Maddux.

Maddux sells electrical materials and supplies. A-C is an electrical subcontractor. A-C maintained an open account with

Maddux that enabled A-C to purchase materials for Maddux on credit. In November, 1992, A-C solicited bids from various electrical suppliers, including Maddux, in connection with a subcontract on which A-C proposed to bid. A-C accepted a bid from Maddux and incorporated Maddux's quoted price into its bid for the electrical subcontract. After A-C was awarded the subcontract, it sent Maddux a purchase order for the materials. On receiving the purchase order for $42,000.00 worth of materials, Maddux performed an extensive credit check on A-C and, based on the information it gathered,[1] concluded A-C did not meet its underwriting criteria for credit purchases. Maddux, therefore, refused to extend credit to A-C for the purchase of the supplies. Rather than pay Maddux cash for the materials, A-C bought the materials that it needed to perform its subcontract from the next lowest bidder. Maddux later brought suit against A-C seeking $5,097.78, an amount that Maddux alleged A-C owed it on A-C's open account. A-C counterclaimed for an alleged breach of contract arising from Maddux's failure to sell it the materials on credit, claiming an offset of $6,403.34. The master found Maddux breached its contract with A-C and awarded A-C judgment in the amount of $1,370.29 on its counterclaim.

We agree with Maddux that, irrespective of any contract between the parties regarding the materials Maddux offered to provide A-C in connection with its bid and the terms of sale and irrespective of whether Maddux communicated to A-C its policy regarding credit verification, the evidence supports no other conclusion that that Maddux had reasonable grounds to believe A-C "to be insolvent" and therefore justifiably refused to deliver the materials in question unless A-C paid for them

---

[1] This information consisted of the following: Maddux's own financial records that showed A-C's account was past due; a credit report from Dunn & Bradstreet that listed several past-due accounts; a credit report from the National Association of Credit Management showing that nearly two-thirds of A-C's obligations were past due; a report from Moore Electric, an electrical supplier, that Moore had placed a credit hold on A-C's account because an amount owed by A-C was ninety days past due; and a report from Southeastern Electric Distributors, an electrical supplier, that told of difficulty in collecting amounts due. As did the seller in *Indussa Corp. v. Reliable Stainless Steel Supply Co.*, 369 F. Supp. 976, 978, n. 4 (E.D. Pa. 1974), Maddux introduced this information, not for proving the truth of the matters reflected in the reports themselves, but for the limited purpose of showing why Maddux acted as it did.

in cash. *See* S.C. Code Ann. § 36-2-702 (1) (1976) ("Where the seller discovers the buyer to be insolvent he may refuse delivery except for cash. . . ."); 67 Am. Jur. (2d) *Sales* § 673, at 969 (1985) (even where a sales agreement contemplates a sale on credit, a seller may refuse delivery except for cash if the seller discovers the buyer to be insolvent). Here, the past-due status of A-C's account with Maddux, the credit reports from Dunn & Bradstreet and the National Association of Credit Management, and the information furnished by Moore Electric and Southeastern Electric provided Maddux on the date it refused delivery of the materials to A-C reasonable grounds to conclude A-C was insolvent and thus outside its underwriting criteria. *See* S.C. Code Ann. § 36-1-201(23) (a person is "insolvent" within the meaning of the Uniform Commercial Code when he has "ceased to pay his debts as they become due"); *Indussa Corp. v. Reliable Stainless Steel Supply Co.*, 369 F. Supp. 976 (E.D. Pa. 1974) (wherein the court held a buyer insolvent where the buyer inordinately delayed paying its debts to the seller and a Dunn & Bradstreet report, which was admitted only to show what the seller knew about the buyer's financial condition when it exercised its rights under § 2-702, indicated the seller was delinquent in payments to other creditors); 67A Am. Jur. (2d) *Sales* § 1031, at 427 (1985) (listing facts and circumstances that would justify a seller in withdrawing credit terms and requiring cash). Maddux, then, committed no breach of contract.

We do not reach the merits of Maddux's remaining arguments.

Reversed and remanded.

SHAW and HEARN, JJ., concur.