THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Employers Insurance of Wausau, Plaintiff,
 
 
 

v.

 
 
 
 Robert J. Moran and Eric C. Hansen, Defendants.
 
 
 

 
 
 
 Eric C. Hansen, Third-Party Plaintiff,
 
 
 

v.

 
 
 
 Caldwells Diving Co., Inc., Third-Party Defendant,
 Of whom Eric C. Hansen is the, Appellant,
 
 
 

 
 
 
 And Employers Insurance of Wausau, Robert J. Moran and Caldwells Diving Co., Inc., are the, Respondents.
 
 
 

Appeal From Georgetown County
 James E. Lockemy, Circuit Court Judge
 Paula H. Thomas, Circuit Court Judge

Unpublished Opinion No. 2006-UP-297
Submitted June 1, 2006  Filed June 26, 2006

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

 
 
 
 Eric C. Hansen, of Tuckerton, N.J.; Pro Se.
 John S. Wilkerson, III, Troy G. Thames, and R. Hawthorne Barrett, all of Charleston, Pope D. Johnson, III, of Columbia and Robert W. Achurch, III, and Mary Bass Lohr, both of Beaufort; for Respondents.
 
 
 

PER CURIAM:  Employers Insurance of Wausau (Wausau) sued attorney Robert J. Moran and Morans former client Eric C. Hansen to recover funds in Morans escrow account on which it claimed a lien for benefits paid to Moran under the Federal Longshore and Harbor Workers Compensation Act.[1]  In his responsive pleadings, Hansen filed counterclaims against Wausau and cross-claims against Moran.  After the trial court granted Morans request to interplead the disputed funds into the court, it granted summary judgment to Moran on Hansens cross-claims, dismissed some of Hansens counterclaims against Wausau, and dismissed third-party claims that Hansen later brought against Caldwells Diving (Caldwell), his former employer.  Hansen appeals.  We affirm in part, reverse in part, and remand.[2]
FACTS
On April 17, 1991, Hansen, while working for Caldwell as a commercial diver, was seriously injured when a crane became detached and fell on him.  Although Hansen resided in New Jersey, the accident occurred at the Port Royal Sound in Beaufort, South Carolina.  
Wausau provided insurance for Caldwell, including coverage under the LHWCA and the Jones Act.[3]  Pursuant to the LHWCA, Wausau, on Caldwells behalf, paid Hansen voluntary medical and disability benefits totaling $181,160.04.
 In November 1993, after Hansen applied for compensation under the LHWCA, Moran sued Caldwell on Hansens behalf in the Beaufort County Court of Common Pleas alleging Caldwell was negligent under the Jones Act and breached certain duties relating to seaworthiness.  After this action was filed, Wausau discontinued paying Hansen LHWCA benefits.[4]
The parties settled the lawsuit in 1996.  Under their agreement, Hansens total settlement was $1,320,325.88.  This amount included a waiver by Wausau of a lien it claimed on $181,160.04 that it had paid to Hansen under the LHWCA.  The waiver of the lien, however, was contingent on approval of the settlement by the United States Department of Labor pursuant to § 908(i) of the LHWCA.[5] 
Hansen received $1,139,165.84, representing the cash portion of the settlement after the deduction of counsel fees and costs.  Moran retained $181,160.04, the amount of the lien, in his escrow account pending approval of the settlement by the Department of Labor.  
Hansen executed the necessary documents to effect the settlement; however, the district director of the Department of Labor tolled the approval period because of insufficient information.  Later, however, Hansen informed the director he was not ready to settle the claim, prompting the director to shelve the settlement approval pending submission of a new petition and Hansens agreement to proceed. 
Moran later ceased acting as Hansens attorney, but retained the $181,160.04 in his escrow account pending resolution of Wausaus claimed lien.  Moran claimed he was properly withholding the disputed funds under the South Carolina Rules of Professional Conduct.  Morans law firm produced an attorney-client settlement statement detailing fees and costs and reducing the amount disbursed to Hansen by these amounts.  The fees were calculated based on the total amount of the settlement, including the escrowed funds.
By order dated August 7, 1998, a federal administrative law judge in Camden, New Jersey, found Hansen was not entitled to benefits or attorney fees under the LHWCA because he was classified as a seaman.  The order did not address Wausaus prior payments or the claimed lien.  On or about November 26, 2001, the United States Supreme Court denied certiorari on Hansens appeal of this order, thus in effect upholding the determination that Hansen was ineligible to recover under the LHWCA.
By letter dated April 17, 2001, the Department of Labor disapproved the settlement and further advised Hansen the funds in Morans escrow account must be repaid to the employer/insurer as a result of their lien due to benefits paid voluntarily under the [LHWCA].  On January 15, 2003, however, the Department sent another letter stating our office has no authority to determine the proper ownership of those funds.  Therefore, it was a regrettable error when we advised Mr. Hansen . . . that the $181,000 held in escrow from the Jones Act settlement must be repaid to the employer/carrier.  The Department further advised in the second letter that the [LHWCA] does not have any provision for recoupment of benefits erroneously paid, except as a credit against future compensation payable. 
On December 5, 2002, Wausau commenced this action in the Georgetown County Court of Common Pleas against Hansen and Moran to recover the escrowed funds.  Hansen hired a new attorney and counterclaimed against Wausau, alleging causes of action for collection, breach of contract accompanied by a fraudulent act, and unfair trade practices.  Hansen also filed a cross-claim against Moran, alleging causes of action for collection, breach of contract accompanied by a fraudulent act, negligence, breach of trust, and unfair trade practices.
On December 16, 2003, Circuit Judge Paula Thomas held a hearing on various motions in the case, including Hansens motion for judgment on the pleadings and Morans requests for interpleader and permission to deposit the escrowed funds into the court.  At the hearing, the parties consented to the withdrawal of Morans motion to deposit the funds because the funds were earning interest in Morans escrow account.  By order dated December 18, 2003, Judge Thomas noted the motion was withdrawn and informed the parties she was taking Hansens motion for judgment on the pleadings under advisement.
On January 26, 2004, Judge Thomas issued an order granting Hansens motion for judgment on the pleadings, finding Hansen was entitled to judgment on both Wausaus claim for the $181,160.04 in Morans escrow account and his counterclaim for these funds.  According to Judge Thomas, [Wausau] has no cause of action under South Carolina law, and therefore no remedy in a South Carolina Court.  Essentially, [Wausau] is attempting to create a state court remedy where there is none.  Judge Thomas further stated  [t]he issues raised by [Wausau] would appear to be better addressed to the Federal Courts and to the administrative agency concerned with the [LHWCA], finding there is no provision of [the LHWCA] or the Jones Act which gives [Wausau] the remedy it seeks. . . . There is also no indication that Congress intended to provide employers or their insurers with a state or federal court remedy to recoup erroneously paid benefits.
Judge Thomas further held the only means by which Wausau could conceivably obtain a lien on the funds would be under the provisions of the LHWCA or the Jones Act, but noted Congress has clearly spoken on this issue.  It is not the role of a state court to create such a remedy under these facts.  Ultimately, Judge Thomas concluded Wausau has no right to a lien against the proceeds of Hansens settlement and ordered Moran to release the funds in his escrow account to Hansen.
In her order, Judge Thomas specifically addressed the issues raised by the parties and analyzed the relevant state and federal law applicable to Wausaus lien claim.  She concluded Wausau articulated no salient cause of action and  . . . this claim should not proceed further.  Although Judge Thomas acknowledged the issues Wausau raised in its pleadings would appear to be better addressed to the Federal Courts and to the administrative agency concerned with the [LHWCA], she granted Hansens motion for judgment on the pleadings based on her determination that Wausau has no remedy under the facts alleged. As we read her order and consider it in its entirety, Judge Thomas never specifically ruled the South Carolina state courts lacked subject matter jurisdiction to adjudicate the matter.    
Wausau moved to alter or amend Judge Thomass decision.  Specifically, Wausau alleged error in the trial courts failure to find it had a judicially created lien against the settlement funds in the amount it erroneously paid to Hansen.  Wausau also maintained the court did not have authority to order disbursement of the money held in escrow because the order appeared to indicate that the federal court was the appropriate forum to decide such claims.
On February 18, 2004, Judge Thomas issued an order denying Wausaus post-trial motion on the issue of the judgment on the pleadings.  Wausau did not appeal this portion of the order.  
As to release of the funds; however, the order provided as follows:  

 The Motion to Reconsider with regards to the deposit of funds is hereby GRANTED due to the fact that this motion was withdrawn by the attorney for the Defendant at the hearing before the court.  This is evidenced in the Form Order signed by this Court on December 18, 2003.  Thus there is no outstanding motion regarding the funds upon which a ruling is necessary.

Judge Thomas issued an amended order on February 20, 2004, in which she deleted information about the motion being withdrawn and stated the following:  

 The Motion to Reconsider with regard to the deposit of funds is hereby GRANTED, therefore, that portion of the Order requiring disbursement of the funds is stricken.  The court finds that issue was not before it for determination.  This is evidenced in the Form Order signed by this Court on December 18, 2003.  Thus there is no outstanding motion regarding the funds upon which a ruling is necessary.

On March 2, 2004, Hansen filed a motion to compel the release of the funds.  Pursuant to this motion, Judge Thomas issued an order dated March 9, 2004, in which she stated [t]his Court did not order the funds to be held in escrow and therefore, will not order them released.  This Court did, in a previous order, dismiss the pending claim due to lack of jurisdiction of this Court.[6]
Subsequently, numerous motions came before Circuit Judge James Lockemy, including Hansens motion to file a third-party complaint against Caldwell and Morans motions for summary judgment and for leave to deposit the funds into the court. On April 5, 2004, Judge Lockemy issued a form order granting Hansens motion to bring Caldwell into the lawsuit, addressing certain concerns not at issue in this appeal, and taking other motions under advisement.
On September 23, 2004, Judge Lockemy issued a final order granting Morans motion for summary judgment on all Hansens claims against him and Morans motion to deposit the escrowed funds into the court.  In granting summary judgment, Judge Lockemy found the statute of limitations barred Hansens cross-claims against Moran.
On the same date, Judge Lockemy issued a second order dismissing Hansens claims against Wausau and Caldwell without prejudice.  In this order, Judge Lockemy interpreted Judge Thomass orders of January 26, 2004, and March 9, 2004, to dismiss Wausaus claim against Hansen for lack of jurisdiction, for that claim to be addressed in federal court.  Judge Lockemy further found as follows:  

 Mr. Hansens claims against Wausau and the third-party defendant arise out of and pertain to the application of the [LHWCA] and those depend or may depend on the federal courts determination of Wausaus claim.  I find that Mr. Hansens claims against Wausau and the third-party defendant should be decided by the federal court.  Having those claims decided in the federal court would insure that there was proper subject matter jurisdiction as to all claims and would eliminate the risk of inconsistent results and avoid unnecessary duplication of time and expense on the part of the court systems and the litigants.

Judge Lockemy also ordered the Georgetown County Clerk of Court to hold the funds on deposit pending an Order of the United States District Court or any other court of competent jurisdiction, authorizing and directing the release of the funds, or an agreement of Mr. Hansen and Wausau authorizing and directing the release of the funds.  Finally, Judge Lockemy relieved Hansens attorney of any further responsibility to represent Hansen in the matter once counsel delivered a copy of the order to Hansen.
In October 2004, Hansen, proceeding pro se, filed a Motion for reconsideration and to withdraw, alter or amend both of the September orders issued by Judge Lockemy.  In addition, he moved for sanctions, costs, and fees.  By orders dated December 14, 2004, and January 19, 2005, Judge Lockemy denied Hansens motions.  This appeal followed.
LAW/ANALYSIS[7]
1.  Hansen contends Judge Lockemy erred in holding his claims against Moran were untimely.  We disagree.
In reviewing the grant of summary judgment, this court applies the same standard that governs the trial court:  i.e., summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[8]  In determining whether any triable issues of fact exist, the evidence and all inferences that can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party.[9]  On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the nonmoving party below.[10]  
All Hansens claims against Moran fall under a three-year statute of limitations.[11]  Under the discovery rule, the three-year limitations period begins to run from the date the injured party either knows or should know by the exercise of reasonable diligence that a cause of action exists for the wrongful conduct.[12] 
In the present case, the record clearly demonstrates Hansen knew or should have known of his potential claims against Moran in 1996, when Moran retained his fees out of the settlement and retained part of the settlement funds in his escrow account rather than disburse them to Hansen.[13]  Hansen failed to take any action on those claims until 2003, when he filed his cross-claims against Moran in this action, almost seven years after Moran placed the disputed funds into escrow and withheld attorney fees and costs.  
2.  Hansen contends the trial court erred in granting Morans motion for interpleader and leave to deposit the disputed funds with the clerk of court.  We disagree.  Hansen, through his attorney, consented to the funds being entrusted to the clerk of court and is bound by his counsels action.[14] 
John S. Wilkerson represented Moran and David B. Marvel represented Hansen at the hearing before Judge Lockemy. The following colloquy occurred:

 THE COURT: . . . What other issues are there on your behalf now at this time, Mr. Wilkerson?
 MR. WILKERSON: The only other one that I have, Your Honor, I dont think theres going to be a dispute about this. We just need the Courts assistance on this. Is that Mr. Moran has continued to maintain these funds in an interest bearing escrow account. . . .  We filed a[n] interpleader asking if we be allowed to interplead the funds into the court or the Court to rule on whos entitled to the money.
 . . . I have here a certified check from the Bank of America in the total amount of $232,092.48 made payable to the clerk of court of Georgetown County. We would like to have the Court order that that money be . . . accepted by the clerk of court and held until further order of the Court so that these other parties can resolve their issues as to who is entitled to this money. . . .
 THE COURT: Mr. Marvel, you object to the amount file[d] with the clerk of court? 
 MR. MARVEL: No, Your Honor.
 THE COURT: All right, your motions granted.
 MR. WILKERSON: Thank you, Your Honor. So, should I present to the Court an order to the effect that the money is being received by the clerk of court pursuant to this courts order to be - - -  
 THE COURT: Without objection from the co-defendant.
 MR. WILKERSON: - - - to be held until further order of the Court.
 THE COURT: Thats fine.
 MR. WILKERSON: Thank you, Your Honor. I am at this point presenting to the clerk of court that certified check.

Furthermore, under the South Carolina Rules of Civil Procedure, [a]ny party seeking interpleader, . . . may deposit with the court the amount claimed . . . .  The court may thereupon order such party discharged from liability as to such claims, and the action continued as between claimants of such money or property.[15]  In the present case, Morans answer to Hansens cross-claims contained a request for the court to allow Moran to deposit the funds with the clerk of court.  Moran was merely the party holding the money and, once summary judgment was granted in his favor on all of Hansens claims, he no longer had any interest in the action.  
3.  We agree, however, with Hansens argument that Judge Lockemy improperly dismissed his claims for lack of jurisdiction in the state court and in favor of having the claims heard in federal court.
Subject-matter jurisdiction is the  power to hear and determine cases of the general class to which the proceedings in question belong. [16]  Both Wausaus claim and Hansens first counterclaim were collection actions to recover the money in Morans escrow account.  Such actions are within the subject matter jurisdiction of the state courts,[17] as are Hansens remaining causes of action for breach of contract accompanied by a fraudulent act and unfair trade practices.[18]  
The fact that Hansens claims arise out of and pertain to or were brought under either the Jones Act or the LHWCA does not deprive the South Carolina State courts of jurisdiction to decide them.  Under, the United States Constitution, federal judicial power shall extend . . . to all cases of admiralty and maritime jurisdiction.[19]  Federal-court jurisdiction over such cases, however, has never been entirely exclusive.[20] 
A suit under the Jones Act to recover damages for injury to or death of a seaman may be brought in either a federal or a state court.[21]  Such an action, when commenced in a state court, is not subject to removal even when there is diversity of citizenship.[22]  Moreover, the state and federal courts have concurrent jurisdiction over many claims under the LHWCA.[23]    
Furthermore, in an action that Hansen and his wife filed in the United States District Court in New Jersey against Caldwell, United States District Judge Mary L. Cooper issued a memorandum opinion on June 7, 2005, declining to consider the Hansens claims in that action because of the pending appeal before this court.  We find particularly instructive footnote 3 of Judge Coopers order, in which she explained as follows:

 The South Carolina Court of Common Pleas seems to have erred in finding [the Hansens] claim arising out of the LHWCA should be resolved by a federal court. . . . Third party actions under [the] LHWCA may be tried by state courts. See Kermarec v Compagnie Generale Transatlantique, 3[5]8 U.S. 625, 628 (1959) (If this action [an action by a guest of a crew member for injuries sustained on a vessel brought in the United States District Court for the Southern District of New York] had been brought in state court, reference to admiralty law would have been necessary to determine the rights and liabilities of the parties.); Paxos v. Jarka Corp., 171 A. 468, 469 (Pa. 1934) (Admittedly, practice in the federal courts does not control in the courts of this state, but we [the Pennsylvania Supreme Court] will enforce the substantive rights given all parties here of record by the federal [LWHCA].).

Moreover, state courts may decide actions for maintenance and cure and are bound to proceed in such manner that all substantial rights of the parties under controlling federal law will be protected.[24] 
 We therefore reverse the trial courts determination that it lacked authority to hear Hansens claims against Wausau and Caldwell and remand these claims for a decision on the merits.[25]  
4.  In addition, we hold Judge Lockemys dismissal of Hansens collection claim against Wausau was improper.  In her order, Judge Thomas addressed the merits of Wausaus claim for the escrowed funds and Hansens counterclaim for collection of the money.  Although Judge Thomas stated Wausaus claims would appear to be better addressed to the Federal Courts and to the administrative agency concerned with the LHWCA, she nevertheless addressed the merits of these claims after considering the relevant state and federal law and held Wausau has articulated no salient cause of action and that this claim should not be allowed to proceed further.  Contrary to Judge Lockemys interpretation of Judge Thomass order, Judge Thomas did not dismiss the claims for lack of subject matter jurisdiction.  Rather, Judge Thomas granted Hansen judgment on the pleadings on Wausaus lien claim, thus ruling he was entitled to the disputed funds once the court acquired jurisdiction to disburse them.  Because Judge Thomas had already ruled on the merits of those claims, the subsequent issuance of a contrary ruling by another trial judge was error.[26]  
5.  Hansen contends the trial court erred in failing to enforce the judgment granted in his favor for the money that Moran had held in escrow.  
To the extent this argument concerns Judge Thomass orders, we hold Judge Thomas properly ruled that she did not have jurisdiction over the money to order its release because it had not been interpleaded into the court.[27]  In addition, we find Hansen failed to preserve any issues concerning Judge Thomass rulings for review on appeal.[28]  
Subsequently, however, Judge Lockemy granted Morans request for interpleader and permission to deposit the money with the clerk of court.  Once the money was deposited, the court obtained jurisdiction over it and could order its release.[29]  Because Wausau did not appeal Judge Thomass rulings that it had no right to recover the money improperly paid to Hansen, that Hansen was entitled to prevail on his counterclaim for payment the escrowed funds, Judge Thomass decision is the law of this case.[30]  Accordingly, the trial court should have issued an order releasing the money deposited with the clerk of court to Hansen pursuant to Judge Thomass order of January 26, 2004.
6.  Hansen raises issues on appeal related to various form orders the trial court issued in this case.  These form orders have been superseded by formal orders.   A case becomes moot when judgment, if rendered, will have no practical legal effect upon [the] existing controversy.  This is true when some event occurs making it impossible for [the] reviewing Court to grant effectual relief. [31]  This court will only address those issues on appeal pertaining to the final formal orders by the trial court.
CONCLUSION
We affirm the trial courts decision to allow Moran to deposit the escrowed funds into the court and the grant of summary judgment on Hansens claims against Moran.  We reverse the trial courts findings that it lacked subject matter jurisdiction to hear Hansens claims and remand these proceedings to the trial court for (1) entry of an order directing the clerk of court, pursuant to Judge Thomass order granting Hansen judgment on the pleadings, to disburse to Hansen the funds deposited by Moran, and (2) consideration of Hansens remaining causes of action against Wausau and Caldwell. 
AFFIRMED IN PART, REVERSED IN PART, and REMANDED. 
HEARN, C.J., and GOOLSBY and ANDERSON, JJ., concur.

[1]  33 U.S.C. § 901-950 (hereinafter referred to as LHWCA).
[2]  We decide this case without oral argument pursuant to Rule 215, SCACR.
[3]  46 U.S.C. app. § 688.
[4]  According to Wausau, coverage under the Jones Act is mutually exclusive of that under the LHWCA.
[5]  Under this section, [n]o liability of any employer, carrier, or both for medical, disability, or death benefits [under the LHWCA] shall be discharged unless the application for settlement is approved by the deputy commissioner or administrative law judge.  33 U.S.C. § 908(i)(1).
[6] We interpret the term pending claim to refer to Hansens motion for immediate possession of the disputed funds, the matter that prompted the issuance of the order of March 9, 2004.  The orders of February 18, 2004, and February 20, 2004, superseded the provision in Judge Thomass order of January 26, 2004, in which she directed Moran to release the funds to Hansen.  Both of the later orders reference either expressly or by implication the withdrawal of Morans motion for interpleader with the consent of all parties at the hearing on December 16, 2003, as documented in a form order Judge Thomas signed on December 18, 2003.  In both the February 18 and February 20 orders, Judge Thomas concluded there is no outstanding motion regarding the funds upon which a ruling is necessary, indicating she was unable to exercise jurisdiction over disbursement of the money given the procedural posture of the case at the time.
[7]  Hansen raised a total of 25 issues on appeal in his 75-page brief.  We have consolidated the issues for purposes of this opinion.
[8]  Rule 56(c), SCRCP; Baughman v. Am. Tel. & Tel. Co., 306 S.C. 101, 114-15, 410 S.E.2d 537, 545 (1991).  
[9]  Strother v. Lexington County Rec. Commn, 332 S.C. 54, 61, 504 S.E.2d 117, 121 (1998).  
[10] Osborne v. Adams, 346 S.C. 4, 7, 550 S.E.2d 319, 321 (2001).
[11] See S.C. Code Ann. § 15-3-530(1) (2005) (providing a three-year limitations period for an action upon a contract, obligation, or liability, express or implied); id. § 15-3-530(5) (providing for a three-year limitations period for injuries not arising on contract and not enumerated by law); and § 39-5-150 (1985) (prohibiting claims under the South Carolina Unfair Trade Practices Act if brought more than three years after discovery of the unlawful conduct which is the subject of the suit).  Although Hansen alleged a cause of action for breach of trust against Moran, he stated it was based on an alleged breach of fiduciary duty.  
[12] S.C. Code Ann. § 15-3-535 (2005); Dean v. Ruscon Corp., 321 S.C. 360, 363, 468 S.E.2d 645, 647 (1996); Berry v. McLeod, 328 S.C. 435, 444-45, 492 S.E.2d 794, 799 (Ct. App. 1997).   
[13] In correspondence dated May 20, 1996, Hansen pointedly alleged Moran had mishandled his claim and expressed his intent to sue Moran for legal malpractice.
[14] See Koutsogiannis v. BB&T, 365 S.C. 145, 149, 616 S.E.2d 425, 428 (2005) (In the attorney-client relationship, clients are generally bound by their attorneys acts or omissions during the course of the legal representation that fall within the apparent scope of their attorneys authority.); Shelton v. Bressant, 312 S.C. 183, 185, 439 S.E.2d 833, 834 (1993) (reaffirming the long standing rule that a client is bound by his attorneys actions in the settlement of a case); State v. McCrary, 242 S.C. 506, 509, 131 S.E.2d 687, 688-89 (1963) (holding that, because the appellant consented to be tried on two indictments at the same time and failed to object to the mode of trial, he is not in position to assert error here).
[15] Rule 22(b), SCRCP.
[16] Dove v. Gold Kist, 314 S.C. 235, 237-38, 442 S.E.2d 598, 600 (1994) (quoting Bank of Babylon v. Quirk, 472 A.2d 21, 22 (Conn. 1984)).
[17] See, e.g., Regions Bank v. Schmauch, 354 S.C. 648, 582 S.E.2d 432 (Ct. App. 2003) (concerning action to collect amounts owed on loans allegedly guaranteed by the appellant); Maddux Supply Co. v. A-C Elec. Co., Inc., 321 S.C. 182, 467 S.E.2d 448 (Ct. App. 1996) (regarding suit on overdue accounts and counterclaim for breach of contract).  
[18] See, e.g., Conner v. City of Forest Acres, 348 S.C. 454, 465-66, 560 S.E.2d 606, 612 (2002) (discussing breach of contract accompanied by a fraudulent act); Daisy Outdoor Adver.  Co. v. Abbott, 322 S.C. 489, 493, 473 S.E.2d 47, 49 (1996) (deciding a case under the South Carolina Unfair Trade Practices Act).
[19] U.S. Const., Art. III, § 2, cl. 1.
[20] American Dredging Co. v. Miller, 510 U.S. 443, 446 (1994).
[21] 32B Am. Jur. 2d Federal Employers Liability, etc. § 57, at 910 (1996).
[22] Id. at 911.
[23] See Stevedoring Servs. v. Prudential Lines, Inc., 181 Cal. App. 3d 154, 158 (Cal. Ct. App. 1986) (State courts have concurrent jurisdiction with federal courts over claims arising under the LHWCA and general maritime law.).
[24] 78A C.J.S. Seamen § 134, at 634 (1995); see also Gaar v. Quirk, 86 F.3d 451, 453-54 (5th Cir. 1996) (noting the LHWCA does not completely preempt state law); Moss v. Dixie Mach. Welding and Metal Works, 617 So.2d 959, 961 (1993), (noting the wrongful discharge remedy under the LHWCA does not preempt a similar state remedy and cause of action), cert. denied, 510 U.S. 976 (1993).  We note that, in his third-party complaint against Caldwell, Hansen alleged he was entitled to maintenance and cure as a result of his on-the-job injury while working as a seaman.
[25] If necessary for a determination of the rights of the parties, a state court can always rely on federal law.  See, e.g., Montgomery v. CSX Transp., Inc., 362 S.C. 529, 544, 608 S.E.2d 440, 448 (Ct. App. 2004) (making reference to federal law in a FELA case brought in state court).
[26] See Charleston County Dept of Soc. Servs. v. Father, Stepmother, and Mother, 317 S.C. 283, 288, 454 S.E.2d 307, 310 (1995) (There is a long-standing rule in this State that one judge of the same court cannot overrule another.) (citing Tisdale v. Am. Life Ins. Co., 216 S.C. 10, 56 S.E.2d 580 (1950)).
[27] See Johnson v. Serv. Mgmt., Inc., 319 S.C. 165, 168, 459 S.E.2d 900, 902 (Ct. App. 1995) (holding money in a bank account could not be reached through execution and levy, but only through supplemental proceedings), affd, 324 S.C. 198, 478 S.E.2d 63 (1996).
[28] See Wilder Corp. v. Wilke, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) (It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.).
[29] See Rule 67, SCRCP (Money paid into the court under this rule . . . shall be withdrawn only upon the check of the clerk of court in favor of the party to whom the order of the court directs.).
[30] See S.C. Coastal Conserv. League v. S.C. Dept of Health and Envtl. Control, 363 S.C. 67, 76, 610 S.E.2d 782, 487 (2005) (holding an unappealed ruling, whether correct or not, is the law of the case).
[31] Curtis v. State, 345 S.C. 557, 567, 549 S.E.2d 591, 596 (2001) (quoting Mathis v. S. C. State Highway Dept, 260 S.C. 344, 346, 195 S.E.2d 713, 715 (1973)).